IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSEPH R.  TOMELLERI,

        Plaintiff,

v.

ZAZZLE INC.,

        Defendant.

Case No.: 2:13-cv-2576 EFM/TJJ

**MEMORANDUM IN SUPPORT OF
ZAZZLE INC.'S MOTION TO DISMISS**

On December 15, 2014, Plaintiff filed his Amended Complaint.  *See* Doc. 177.  Defendant Zazzle Inc. ("Zazzle"), by and through its counsel of record, respectfully submits this Memorandum in Support of its Motion to Dismiss.  Zazzle's present motion presents many of the same arguments at issue in a related case (*Tomelleri v. CafePress, Inc. et al.*, 2:14-cv-02239-JAR-TJJ).

## I.  INTRODUCTION

Plaintiff brings this lawsuit against Zazzle based on the alleged conduct of third parties using Zazzle's website.  However, Plaintiff has failed to plead (and cannot plead), any theory under which Zazzle would be liable for its users' conduct.

Each of Plaintiff's claims fail.  First, the claim for direct infringement fails because third party users, not Zazzle, are responsible for uploading material to Zazzle's website, and Plaintiff has failed to allege (and cannot plausibly allege) that Zazzle acted volitionally to further the alleged infringement.  Second, Plaintiff's claim for contributory infringement fails because Plaintiff has not plead (and cannot plead) that Zazzle had the requisite knowledge of the alleged infringement and materially contributed to the alleged infringement.  Plaintiff's claim for contributory infringement further fails because Zazzle's services are capable of (and

are largely used for) substantial non-infringing uses.  Third, Plaintiff has failed to plead (and cannot plead) any facts that would make Zazzle vicariously liable for the alleged infringement, as infringing material on Zazzle's website is not a draw for customers, Zazzle does not control its third party users' upload activity, and Zazzle has robust policies to discourage and remedy any infringements.

Indeed, Plaintiff was aware of Zazzle's policies and procedures for efficiently and cost effectively dealing with claims of infringement, yet chose to bring this lawsuit rather than corresponding further with a cooperative Zazzle.  Such conduct suggests an intent to profit from the alleged infringements of Zazzle's third party users, rather than a genuine desire to police one's copyrights.

Because Zazzle cannot be held directly or indirectly liable for the alleged infringements plead by Plaintiff, Zazzle respectfully asks the Court to dismiss the Complaint with prejudice.

## II.  STATEMENT OF RELEVANT FACTS

### A.     Parties.

Plaintiff is a trained biologist and an illustrator of fish.  Complaint ¶10.

Defendant Zazzle owns the website zazzle.com, which allows third-party users, through an automated computer service, to create, buy, and sell customized merchandise online using Zazzle's proprietary e-commerce services.  Am. Compl. ¶¶6, 16; Request for Judicial Notice ("RJN"), Ex. 3.[1]  In doing so, Zazzle provides a marketplace for unique products.  *Id.*

---

[1] Plaintiff expressly refers to the Zazzle website in his Complaint, and also attaches printouts from the website to his Amended Complaint.  *See* Am. Compl. ¶ 16 (Doc. 177) and Exhibit A (Doc. 177-1).  As such, the Court may consider the materials from the website in deciding a motion to dismiss because the website is incorporated by reference in the Amended Complaint and is properly the subject of judicial notice.  *See, e.g.*, *Tatten v. Bank of Am.*

Per the User Agreement found on Zazzle's website, Zazzle's users warrant that they are the creators and owners of the content they upload to the Zazzle website or have the lawful right to do so and are ultimately responsible for that content, not Zazzle. RJN Ex. 1 at Z000002-08.  All products are virtual unless and until ordered by the user or a customer.  Am. Compl. ¶20; Zazzle's response to Plaintiff's cease and desist letter;[2] RJN Ex. 6, p. 2.  Upon proper notification from a rights holder, as in this case, Zazzle promptly investigates and responds to complaints and acts promptly to prevent infringing activity.  RJN, Ex. 3; Ex. 4; Ex. 6, p. 2.

---

*Corp.*, 562 F. App'x 718, 721-22 (10th Cir. 2014) ("[A] court may consider, in ruling on a Rule 12(b)(6) motion, documents incorporated by reference in the complaint; documents referred to in and central to the complaint . . .; and matters of which a court may take judicial notice."); *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1212-13 (10th Cir. 2012) (taking judicial notice of Toyota's filings with the National Highway Traffic Safety Administration for the purposes of determining whether a recall was underway, because the recall would moot the matter before the court); *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008) (holding that a district court properly considered "all the materials" in a state court's file when ruling on a motion to dismiss, where a plaintiff referenced the proceeding in his complaint); *Buhendwa v. Regl. Transp. Dist.*, No. 14-CV-00720-BNB, 2014 WL 1715224, at *2 n.4 (D. Colo. Apr. 30, 2014) (taking judicial notice of the members of an agency's board of directors, as listed on the agency's website, when ruling on a motion to dismiss); *SEC v. Goldstone*, 952 F. Supp. 2d 1060, 1119-20 (D.N.M. 2013) (taking judicial notice of a compilation of SEC filings, because "the accuracy of its contents may be readily determined by sources whose accuracy is not reasonably questioned, as the Defendant have provided the Court with links to world wide web sites that verify" the information in the compilation); *Genetic Techs.  Ltd. v. Agilent Techs., Inc.*, No. 11-CV-01389-WJM-KLM, 2012 WL 1015355, at *9 n.6 (D. Colo. Mar. 23, 2012) (taking judicial notice of a defendant's website for the purposes of analyzing its contacts with the state of Colorado when ruling on a motion to dismiss for lack of personal jurisdiction).

[2]Plaintiff expressly refers to Zazzle's response to his cease and desist letter. Am. Compl. ¶33. The document is therefore incorporated by reference in the Complaint and properly the subject of judicial notice. *See, e.g., GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997) (holding that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss"; granting judicial notice of a document that was neither attached to the complaint nor properly incorporated by reference).

Zazzle also provides information and guidelines for its users in order to prevent infringing material from being uploaded.  RJN, Ex. 1, p. Z000002.  Zazzle's User Agreement explains what type of content is permissible through the Zazzle service and provides some basic information about intellectual property.  *Id.*

**B.      Plaintiff's June 2012 Cease And Desist Letter.**

In June 2012, Plaintiff sent Zazzle a cease and desist letter pursuant to the Digital Millennium Copyright Act ("DMCA").  Am. Compl. ¶24.  Zazzle promptly responded to the letter, removed the content identified, and provided Plaintiff with the information he requested.  Am. Compl. ¶33.  Plaintiff claims in this lawsuit that Zazzle "failed to remove or disable access to *all* images infringing upon Plaintiff's copyrighted Illustrations" (emphasis added) (Am. Compl. ¶32), but Plaintiff does not identify which images allegedly remain at issue (and appears to concede that at least *some* of the material was taken down).[3]  Nor does Plaintiff allege that he advised Zazzle that access to the allegedly infringing images had not been removed.  Rather, he filed this lawsuit more than a year later.

**C.      Plaintiff Fails To Plead Sufficient Facts To State A Claim For Copyright Infringement.**

Plaintiff identifies 41 Copyright Registrations that he claims he owns for his illustrations (collectively referred to as "Illustrations").  Am. Compl. ¶14.  Plaintiff neither attaches any Copyright Registrations to the Amended Complaint, nor does he specify the subject matter of each (or any) of the copyrights identified (*see* Complaint), or the means by which they were allegedly infringed.  Rather, he vaguely alleges that "[s]everal of the images

---

[3]Although not material to this Motion, which assumes as true Plaintiff's allegations, in fact each and every item identified by Plaintiff was expeditiously removed.  The only items not removed are those which Plaintiff chose not to notify Zazzle about pursuant to the DMCA, which would have resulted in those items also being expeditiously removed.

available or uploaded through Zazzle have infringed upon Plaintiff's copyrights in the Illustrations and these images are used to create a final finished product" (Am. Compl. ¶19), and attaches printouts from Zazzle's website allegedly showing the Illustrations on various virtual products. Am. Compl. ¶21, Exhibit A (Doc. 177-1). Again, notably absent from the Amended Complaint are any allegations connecting any one Illustration with any one allegedly infringing virtual product. Indeed, even Plaintiff is unsure as to which of his copyrights are at issue in this lawsuit: "Plaintiff has discovered Zazzle's infringing use of at least sixty-three (63) of Plaintiff's Illustrations on Zazzle and other third person websites." Am. Compl. ¶22. Plaintiff does not identify these "other third person websites" or explain any relationship between these websites and Zazzle.

**D.     Plaintiff Fails To And Cannot Plead Sufficient Facts To State A Claim For Violation of 17 U.S.C. §1202.**

Plaintiff's Amended Complaint fails to disclose that he does not include a proper copyright notice or copyright management information metadata in his images. Plaintiff cannot further amend his complaint to allege that he does include relevant metadata because he admitted under oath that he does not include copyright management information in his images. *See* Doc. 153-3 at 246:19-248:7. The only information Plaintiff has ever alleged to comprise copyright management information is a © watermark on his image(s).

Based on these vague allegations, Plaintiff claims that Zazzle engaged in direct, contributory, and vicarious copyright infringement, as well as violating 17 U.S.C. §1202. For the reasons set forth below, Plaintiff has not alleged, nor can he allege, facts sufficient to state a claim against Zazzle under any of these theories of liability.

## III.  ARGUMENT

### A.      Plaintiff Fails To State Any Claim For Relief Against Zazzle.

In ruling on a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), courts assume as true all well-pleaded factual allegations and then determine whether such allegations plausibly give rise to an entitlement of relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face.  *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In determining whether a complaint states a plausible claim for relief, courts draw on their judicial experience and common sense.  *Iqbal*, 556 U.S. at 678.

Courts need not accept as true those allegations that state only legal conclusions.  *See id.*  Under *Iqbal* and *Twombly*, "[a] plaintiff must 'nudge [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012).  The Tenth Circuit has explained that "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions.'"  *Id.*  The court has further stated that in "applying this new, refined standard, we have held that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  *Id.* at 1191.

The plaintiff bears the burden to frame the complaint with enough factual matter to suggest that the plaintiff is entitled to relief.  *Twombly,* 550 U.S. at 556.  Plaintiff does not meet this burden by making threadbare recitals of a cause of action accompanied by mere

conclusory statements (*id.*); rather, plaintiff can state a facially plausible claim only by pleading factual content from which the court can reasonably infer that the defendant is liable for the misconduct alleged (*Iqbal*, 556 U.S. at 678).

Plaintiff must show more than a mere possibility that the defendant has acted unlawfully and must plead facts that are beyond being "merely consistent with" liability. *Id.* (citing *Twombly*, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. *Iqbal*, 556 U.S. at 678. To survive dismissal, a complaint's well-pleaded facts must create more than a *possibility* of misconduct and, rather, *show* that plaintiff is entitled to relief. *Id*.

**B.     Plaintiff Fails To State A Claim Against Zazzle For Direct Copyright Infringement Because Plaintiff Has Not Alleged And Cannot Allege Any Volitional Act By Zazzle To Further The Infringement.**

Plaintiff's first, second, third, and fourth claims for direct infringement fail to state a claim against Zazzle because Plaintiff failed to allege (and cannot allege) any volitional conduct by Zazzle in the alleged infringements because it is Zazzle's third party users, not Zazzle, who upload material to the website.

To establish copying by Zazzle, plaintiff must show "[Zazzle] cause[d] the copying." *Fox Broad. Co., Inc. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2014). Plaintiff has not, and cannot, meet this burden.

The critical inquiry in assessing the requisite causation focuses on the volitional conduct of the defendant in causing the copy to be made. *Id.*; *see also Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs.*, 907 F. Supp. 1361, 1370 (N.D. Cal. 1995). ("Although copyright is a strict liability statute, there should still be some element of volition or causation which is lacking where a defendant's system is merely used to create a copy by a third party."). Courts

focus on the party who is ultimately responsible for causing the copy to be made. *Fox Broad. Co., Inc.*, 747 F.3d at 1067 (affirming the district court's determination of no direct liability given that the user, not defendant Dish, was the most significant and important cause of the copying); *see also Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008).

Circuit Courts throughout the country have confirmed that direct liability may be imposed for material posted or stored online or transmitted by third parties only where the provider has engaged in some volitional act to further the infringement (i.e., where causation is shown). These Circuit Court cases are instructive, in that each involved a defendant that provided a platform or service upon which its third party users could make copies. For example, in *Cartoon Network*, the Second Circuit held that defendant Cablevision was not directly liable for copyright infringement for its operation of a "Remote-Storage DVR System" that allowed Cablevision customers to record programs on central servers at Cablevision's facilities and play the programs back for viewing at home. 536 F. 3d at 130-33. Reversing the district court, the Second Circuit ruled that it was the customer, not Cablevision, who was responsible for the volitional act upon which direct liability could be based. The court explained: "There are only two instances of volitional conduct in this case: Cablevision's conduct in designing, housing, and maintaining a system that exists only to produce a copy, and a customer's conduct in ordering that system to produce a copy of a specific program." *Id*. at 132-33. The court declined to impose liability on Cablevision as a direct infringer for copies that were made upon the customer's command. *Id*. at 131.

Even where a defendant is marginally involved the copying process, where the "initial step" of copying is undertaken by the user, the service provider will not be held liable for

direct copyright infringement.  *Fox Broad.*, 747 F.3d at 1067.  In *Fox Broadcasting*, the Ninth Circuit affirmed the district court's determination that Dish Network users, rather than Dish Network, made copies of Fox programs using the Prime Time Anytime feature.  747 F.3d at 1073.  The district court noted that Dish exercises a degree of discretion over the copying process beyond that which is exercised by Cablevision in *Cartoon Network*, in that Dish decides how long the copies are available for viewing, maintains the authority to modify the start and end times of the primetime block, and users cannot stop a copy from being made once the recording has started.  *Id*. at 1067.  Nonetheless, the court reasoned that because "the user, not Dish, must take the initial step of enabling Prime Time Anytime . . . [t]he user . . . is the most significant and important cause of the copy." *Id.* at 1067 (internal quotation marks and citations omitted).

The determination of direct liability is the same in the internet context.  In *CoStar v. Loopnet*, 373 F.3d 544 (4ᵗʰ Cir. 2004), the Fourth Circuit, in finding that an ISP was not liable for direct copyright infringement, drew an analogy between the ISP and the owner of a traditional copy machine: "a copy machine owner who makes the machine available to the public to use for copying is not, without more, strictly liable under [the Copyright Act] for illegal copying by a customer." 373 F.3d at 550.  The Fourth Circuit further stated that "an ISP who owns an electronic facility that responds automatically to users' input is not a direct infringer" (*id*.), even where an employee of the ISP reviewed the uploaded photos and blocked photos that did not meet certain criteria.  *Id.* at 556 (holding that "[a]lthough LoopNet engages in volitional conduct to block photographs measured by two grossly defined criteria, this conduct, which takes only seconds, does not amount to 'copying,' nor does it add volition to LoopNet's involvement in storing the copy"); *see also MGM Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 959 (2005) ("As

*Sony* itself makes clear, the producer of a technology which permits unlawful copying does not himself engage in unlawful copying . . . .").

Similarly, in *Parker v. Google*, 242 Fed. Appx. 833 (3rd Cir. 2007), plaintiff, an internet publisher, sued Google based on its inclusion of plaintiff's allegedly copyrighted material in an archive of online bulletin board postings containing 845 million messages.  *Id*. at 834.  Plaintiff alleged that a third party posted his copyrighted material on an internet bulletin board without his permission and that Google, as the search engine, provided its users with links to websites that portrayed plaintiff negatively when they used its search engine to search archived online bulletin boards.  *Id.* at 835.  On appeal, the Third Circuit analogized Google to the owner of a traditional copy machine and held that it did not infringe the Copyright Act because its conduct in archiving the bulletin board postings, which it had purchased from a third party, was not volitional.  *Id.* at 836-37.

Like the users in *Cartoon Networks*, *Fox Broadcasting*, *CoStar*, and *Parker*, Zazzle users, not Zazzle, select the content to be uploaded to its website.  *See* RJN, Ex. 1 at Z000001-2; Ex. 2 at Z000034-36.  Zazzle has simply created a platform for small business owners and individuals to upload their unique images and artwork—the overwhelming majority of which is noninfringing—to the website.  In doing so, Zazzle has not engaged in the type of volitional conduct that is required for a finding of direct infringement.  To the contrary, Zazzle actively seeks to deter infringement, and when users do infringe, it has robust policies to facilitate the removal of infringing material uploaded by Zazzle users.  *See* RJN, Ex. 1 at Z000001-2; Ex. 2 at Z000034-36; Ex. 3 at Z003125; Ex. 4.  For example, Zazzle users may not establish an account allowing them to upload an image unless they agree to be bound by both Zazzle's User Agreement and Nonexclusive License Agreement, both of which specifically prohibit users

from engaging in copyright infringement.  *See* RJN, Ex. 1 at Z000001-08; Ex. 2 at Z000034-36.  Further, every product that appears on Zazzle's website is accompanied by a "Report this product" link.  *See* RJN, Ex. 3 (second to last line on Z003125); Ex. 4.  The link allows anyone to report a product that may violate another's intellectual property.

Plaintiff has failed to allege facts that even suggest any volitional conduct by Zazzle in the alleged infringing activity and therefore fails to state a claim for direct infringement against Zazzle.

**C.    Plaintiff Fails To State A Claim Against Zazzle For Contributory Or Vicarious Copyright Infringement.**

Plaintiff's fifth claim for relief against Zazzle is for alleged contributory and vicarious infringement.  Plaintiff has not and cannot state a claim under either theory.

**1.    Plaintiff Fails To State A Claim For Contributory Infringement Against Zazzle.**

Liability for contributory infringement may be imposed only where a person or entity with knowledge of the infringing activity "induces, causes or materially contributes to the infringing conduct of another."  *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).  An allegation that a defendant merely provided the means to accomplish an infringing activity is insufficient to allege a claim for contributory infringement.  *Grokster*, 545 U.S. at 931 (citing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 424, 454-55 (1984)).

**(a)    Plaintiff Has Not Alleged, And Cannot Allege, That Zazzle Had The Requisite Knowledge Of The Alleged Infringement.**

Courts in the Ninth Circuit and Southern District of New York have held that the knowledge required to establish contributory infringement must be of specific infringing files, not merely general knowledge that a site is used for infringement.  *See, e.g.*, *Luvdarts, LLC v.*

*AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (affirming that plaintiff did not state a claim for contributory infringement against mobile phone carriers over the alleged infringement of their users in forwarding text messages containing original content without authorization to do so because a plaintiff must allege "more than a generalized knowledge . . . of the possibility of infringement"); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 733, 751 (S.D.N.Y. 2012) (knowledge must be based on specific and identifiable infringements of individual items, not a general awareness of infringement).

As discussed above, and as evident from visiting Zazzle's website (*see* RJN Ex. 1 at Z000001-02), Zazzle's users, not Zazzle, upload images to the website. Zazzle has no control over what its users upload and does not know whether the material uploaded by its users is subject to copyright protection. RJN, Ex. 1 at Z000004 ("Zazzle does notpre-screen submitted Content"); *see also Wolk*, 840 F. Supp. 2d at 750–51 (granting summary judgment for Defendant on contributory infringement claim where there was no evidence that Defendant sought to encourage infringement by its users, Defendant did not know whether images uploaded by users were their own, licensed or infringing, and there was no evidence that one defendant had any knowledge that it was passing along infringing images to another defendant).

Conceding that Zazzle could not possibly know whether the images uploaded by its users are infringing, Plaintiff does not even allege that Zazzle had such knowledge. Rather, Plaintiff's only allegation regarding Zazzle's knowledge is that Zazzle had "actual knowledge of its infringing activity" as a result of the cease and desist demand made by Plaintiff in June 2012. Am. Compl. ¶¶32. Plaintiff fails to allege, however, (1) which of his works were the

subject of the June 2012 demand, and (2) whether the June 2012 demand concerned the same works at issue in this lawsuit.[4]  Where, as here, a

> plaintiff fails to identify the material or materials to which he claims has been infringed but rather directs the Defendant and this Court to various letters he sent to the Defendant, which the plaintiff posits clearly identify the referenced material . . . .   These vague statements are simply insufficient to put the Defendant on notice of the claims against them.

*Newborn v. Yahoo!, Inc*., 391 F. Supp. 2d 181, 189 (D.D.C. 2005) (citation omitted) (granting motion to dismiss plaintiff's contributory infringement claim because plaintiff failed to allege that he provided sufficient information to Yahoo to put it on notice of the alleged infringement).

The Supreme Court has held that "mere knowledge of infringing potential or of actual infringing uses" is not enough to establish liability.  *Grokster*, 545 U.S. at 937; *Wolk*, 840 F. Supp. 2d at 751 (noting that "'knowledge' means 'actual or constructive knowledge of specific and identifiable infringements of individual items,' not 'a general awareness that there are infringements'"); *see also Viesti Assocs., Inc. v. Pearson Educ., Inc.*, No. 12–cv–02240–PAB–DW, 2013 WL 4052024, at *7 (D. Colo Aug 12, 2013) ("[E]ven though the complaint avers that [defendant] had 'knowledge of the unauthorized use of the Photographs,' . . . without factual allegations describing instances of [defendant] encouraging or promoting third parties to infringe [plaintiff's] photographs, the complaint does not permit the Court to infer more than the mere possibility of [defendant's] misconduct . . . allegations that are merely consistent with the possibility that [defendant] is liable fail to state a plausible claim for relief." (citing *Iqbal*, 556 U.S. at 678.)

---

[4]To the extent plaintiff is suing on other user infringements for which notice was not provided, those alleged infringements are not actionable under the Digital Millennium Copyright Act. *See* 17 U.S.C. §512.

The nature of Zazzle's website—containing over 203 million uploaded images—makes actual knowledge of the alleged infringements a near impossibility.  Conceding this fact, Plaintiff attempts to attribute knowledge of the alleged infringements to Zazzle through the cease and desist letter.  Am. Compl. ¶¶32-33.  Yet Plaintiff fails to state whether the infringements alleged in that letter were the same as those alleged in the Complaint.  Indeed, Plaintiff appears to admit that Zazzle disabled access to at least some of the allegedly infringing material.  Am. Compl. ¶32 ("Zazzle failed to remove or disable access to *all* images infringing  . . . .") (emphasis added).  Plaintiff has therefore failed to satisfy the knowledge element of his contributory infringement claim.

> **(b)** **Plaintiff Has Not Alleged, And Cannot Allege, That Zazzle Materially Contributed Or Induced The Alleged Infringement.**

The "material contribution" element of a claim for contributory infringement has also been characterized as "substantial participation" (*UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 411 (2004)) or "'personal conduct that encourages or assists the infringement.'"  *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 757 (7th Cir. 2012).  The support must be "'more than a mere quantitative contribution to the primary infringement . . .[, it] must be substantial.'"  *Arista Records LLC v. USENET.com*, 633 F. Supp. 2d 124, 155 (S.D.N.Y.  2009).  Moreover, even where a defendant's contribution is material, it may evade liability if its product is "capable of substantial noninfringing uses."  *Sony*, 464 U.S. at 442.

Here, Plaintiff's allegations, even when taken as true, fall short of stating a claim for contributory infringement.  Even where a plaintiff alleges that a defendant "'enabled, induced, caused, facilitated, or materially contributed to the unauthorized use of the [copyrighted materials]' these allegations are insufficient because they are nothing more than a recitation of one element of a contributory copyright infringement claim." *Viesti*, 2013 WL 4052024, at *7

(citing *Iqbal*, 556 U.S. at 678).  In *Viesti*, although the complaint alleged that defendant "transmitted" the photographs to other entities "'who then translated the publications at issue into additional languages,'" "simple transmission does not equate [sic] inducement because this element 'premises liability on purposeful, culpable expression and conduct' that is shown by 'affirmative steps taken to foster infringement.'" 2013 WL 4052024, at *7 (quoting *Grokster*, 545 U.S. at 936).  As such, the court held that there are "no factual assertions describing how [defendant] enabled, induced, or facilitated the infringement of the photographs."   2013 WL 4052024, at *7.  Plaintiff's allegations regarding Zazzle's alleged contribution are even weaker than those of the plaintiff in *Viesti*.  Here, Plaintiff merely states in conclusory fashion that Zazzle "encourages and facilitates online storefronts to sell customizable novelty items" (Am. Compl. ¶16), "digitally modified" the Illustrations (Am. Compl. ¶28), and has "the exclusive right to provide and manage all material aspects of the transactions with its customers" (Am. Compl. ¶25).  None of these allegations amount to "'purposeful, culpable expression' . . . 'to foster infringement'" (*Viesti*, 2013 WL 4052024, at *7 (quoting *Grokster*, 545 U.S. at 936)), or a "material contribution" (*Gershwin Publ'g Corp.*, 443 F.2d at 1162), or "substantial participation" (*Bertelsmann*, 222 F.R.D. at 411) in the alleged infringement.  Rather, plaintiff's allegations concern automated processes that take place after one of Zazzle's users uploads an image to Zazzle's website, an event that transpires, according to plaintiff, "thousands" of times "daily." Am. Compl.  ¶30.

Additionally, Zazzle actively seeks to prevent infringing activities.  On its website, Zazzle's User Agreement notifies its users that they are prohibited from uploading "any Content that my infringe any patent, trademark, trade secret, copyright or other

intellectual property right of any party." *See* RJN, Ex. 1 at Z000002.  Zazzle also provides a clear course of action for parties who believe their intellectual property rights have been infringed, in which the infringing material is removed and the user's account may be terminated.  See RJN, Ex. 3; Ex. 4; Ex. 1 at Z000007.

Plaintiff has failed to plead either element of a claim for contributory infringement: knowledge or contribution.  As such, his claim for contributory infringement should be dismissed.

**2.      Plaintiff's Claim For Vicarious Infringement Against Zazzle Fails.**

To state a claim for vicarious infringement, a plaintiff must allege that the defendant (1) had the right and ability to supervise the infringing activity or infringer; and (2) possessed a direct financial interest in the exploited copyrighted materials.  *See La Resolana Architects, PA v. Reno, Inc*., 555 F.3d 1171, 1181 (10th Cir. 2009) (citing *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)).

> **(a)      Plaintiff Has Not Adequately Alleged Financial Interest Because Infringing Material Is Not A "Draw" For Customers To Zazzle.**

Courts have held that the central question of the "'direct financial benefit'" inquiry is "whether the infringing activity constitutes a draw for subscribers, not just an added benefit." *Ellison*, 357 F.3d at 1079.  In *Ellison v. Robertson*, the Ninth Circuit held that there was no financial benefit to AOL for purposes of vicarious liability where AOL provided its subscribers access to the peer-to-peer file sharing network, USENET.  357 F.3d at 1078.  The *Ellison* court distinguished the facts in that case from the earlier Napster case, where the court found that the defendant received a financial benefit.  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir 2001).  The *Ellison* court stated that "[i]n *Napster II*, we found that Napster increased its userbase by providing its customers with access to

pirated copies of protected works and that ample evidence supported the district court's finding that Napster's future revenue was directly dependent upon increases in userbase." *Ellison*, 357 F.3d at 1078 (internal quotation marks omitted).  The *Ellison* court noted that "virtually all of Napster's draw of customers resulted from Napster's providing access to infringing material."  *Id.* (internal quotation marks omitted).  By contrast, because "AOL's USENET group access constituted a relatively insignificant draw when cast against AOL's vast array of products and services, . . . AOL did not receive a direct financial benefit from the infringing activity."  *Id.*

Here, Plaintiff has not alleged, nor can he, that infringing material is a draw for customers or a means by which Zazzle increases its user base.  First, Zazzle's website consists largely of independently created works by individuals or small business owners, not infringing material.  Second, pursuant to its written policies (*see* RJN, Exs. 1, 2, 3, 4, 6), because Zazzle actively deters infringement and removes infringing material from its site when it becomes aware of it, access to such infringing material is extremely insignificant to Zazzle's customers.  Third, that Zazzle earns revenue from the sale of products on its site—even including any *de minimis* amount from allegedly infringing products—is not enough to hold that Zazzle has a financial interest in the infringement.  Moreover, Zazzle does not earn different revenues for its services based on whether the content involved is infringing or non-infringing.  Pricing is the same, irrespective of the content.  Plaintiff has not (and cannot) allege otherwise.

           **(b)**      **Plaintiff Has Not Adequately Alleged Zazzle's Right And Ability To Control Its Users.**

Vicarious liability is established for an online service provider where it "has the right and ability to supervise the infringing activity." *Ellison v. Robertson,* 189 F. Supp. 2d 1051,

1076 (C.D. Cal. 2002) (internal quotations omitted), *aff'd in relevant part on other grounds*, 357 F.3d 1072 (9th Cir. 2004).  In *Ellison*, the court held that "AOL's after-the-fact ability to remove or block access to infringing activities by non-AOL users . . . does not constitute an ability to control or supervise." *Ellison*, 189 F. Supp. 2d at 1060; *see also Hendrickson v. eBay Inc.*, 165 F. Supp. 2d 1082, 1093 (C.D. Cal. 2001) ("[T]he 'right and ability to control' the infringing activity, as the concept is used in the DMCA, cannot simply mean the ability of a service provider to remove or block access to materials posted on its website or stored on its system."); *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1173-74 (9th Cir. 2007) (Google's ability to control its own index, search results, and webpages does not give Google the right to control the infringing acts of third parties even though that ability would allow Google to affect those infringing acts to some degree); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 803 (9th Cir. 2007) (declining to impose vicarious liability even though Defendant could "take certain steps that may have the indirect effect of reducing infringing activity").

Here, Plaintiff vaguely and in conclusory fashion alleges that "Zazzle has the authority, right, power and ability to control the actions of its online storefront companies" (Am. Compl. ¶53), but does not allege how Zazzle allegedly exerts this "authority, right, power and ability to control."  The allegations are therefore insufficient "threadbare recitals of a cause of action accompanied by mere conclusory statements." *Twombly,* 550 U.S. at 556.  Moreover, Zazzle's relationship with its users is almost identical to the relationship between AOL and its users as described in *Ellison*: Zazzle users act independently, and Zazzle merely retains the after-the-fact ability to remove or block access to infringing items uploaded to its website.  Such an "ability to delete or block access to . . . infringing material after those postings ha[ve] already found their way onto [defendant's] servers [i]s insufficient to constitute

18

'the right and ability to control the infringing activity' as that term is used in the context of vicarious copyright infringement." *Ellison*, 189 F. Supp. 2d at 1062.

Plaintiff's claim for vicarious infringement must therefore be dismissed.

**E.    Plaintiff Fails to State A Claim Against Zazzle For Violation Of The Digital Millennium Copyright Act**

Plaintiff's seventh claim for relief against Zazzle is for alleged violations 17 U.S.C. §1202, which involves the deletion or modification of copyright management information. Plaintiff has not and cannot state a claim under this theory.

**1. Copyright management information has a particular meaning in the statute.**

First, Plaintiff improperly has equated copyright management information ("CMI") with metadata.  Not all metadata is CMI.  The statute defines CMI as follows:

> [A]ny of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:
> (1) **The title and other information identifying the work, including the information set forth on a notice of copyright.**[5]
> (2) **The name of, and other identifying information about, the author of a work.**
> (3) **The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.**
> (4) With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.
> (5) With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.
> (6) **Terms and conditions for use of the work.**

---

[5] A notice of copyright is defined by 17 U.S.C. §401(b) to include three elements: (1) the symbol © (the letter C in a circle), or the word "Copyright", or the abbreviation "Copr."; and (2) the year of first publication of the work; and (3) the name of the owner of copyright in the work.

(7) Identifying numbers or symbols referring to such information or links to such information.

(8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.

17 U.S.C. §1202(c) (relevant portions emphasized). For purposes of this litigation, only information identifying the title, author, copyright owner, or terms and conditions for use of the work qualifies as CMI. None of the other categories of CMI are applicable to these facts.

**2. Plaintiff's watermarks are not CMI.**

In the Amended Complaint, Plaintiff failed to plead and cannot plead that his illustrations contain CMI. Despite the complete lack of facts in the Amended Complaint regarding CMI, Plaintiff's other pleading also admit that CMI as defined by the statute is not applied to his illustrations. "Contrary to Defendant's representations, Plaintiff's images from his website do contain CMI in the form of watermarks and some of them say 'copyright Joseph Tomelleri.'" Doc. 153 at 2. This statement is both irrelevant and misleading. As seen in the illustration below, none of the information in 17 U.S.C. §1202(c) is conveyed by Plaintiff's application of a circle c to the illustrations on his website.



http://www.americanfishes.com/shop/trout-salmon/16-atlantic-salmon.html - December 2, 2014. Pursuant to the statutory definition of CMI, the circle c watermark identified by

Plaintiff is not even CMI.  Further – and importantly – Plaintiff's Amended Complaint does not identify which, *if any*, illustrations that were uploaded by third-parties to Zazzle's site actually included "copyright Joseph Tomelleri" in their hard-copy form, which is the only potentially relevant inquiry given that Plaintiff has admitted that he did not include that language in any metadata.  *See* Doc. 153-3 at 246:19-248:7

### 3. Plaintiff's allegations are limited to CMI within metadata, and it is undisputed that Plaintiff does not use CMI in metadata.

Plaintiff's Amended Complaint is limited to CMI contained in metadata.  The only factual allegation regarding removal of CMI is set forth in Paragraph 18:

> 18.    Zazzle intentionally removes the metatdata from images uploaded to its website, including copyright management information, thereby making it difficult for copyright owners to discover the infringing use of their images of [sic] Zazzle's website.

Doc. 177.

Thereafter, Plaintiff incorporates Paragraph 18 to support the legal conclusions in Count VII.

### Count VII

### Against Zazzle – Violation of the Digital Millennium Copyright Act

> 61.    Zazzle has intentionally removed and altered the copyright management information from Plaintiff's images as and when they were uploaded to Zazzle's website in violation of 17 U.S.C. §1202.

> 62.    Zazzle has knowingly and intentionally provided copyright management information for Plaintiff's images that is false and has distributed copyright management information for Plaintiff's images that is false in violation of 17 U.S.C. §1202.

Doc. 177.  Notably, Plaintiff alleges that Zazzle "removed and altered" CMI when the images "were uploaded," which necessarily is an action done using electronic data.

These paragraphs, and thus Plaintiff's allegations, are clearly limited to CMI that is contained in metadata. Metadata is "data that provides information about other data."[6] As seen in the image above, the watermark used by Plaintiff is a part of the actual image. A watermark is not metadata, and, in any event, the watermark used by Tomelleri does not meet the statutory definition of CMI.

Further, it is undisputed that Plaintiff does not include CMI, as defined by the statute, in the metadata for his images. *See* Doc. 153-3 at 246:19-248:7. Even if Zazzle deleted metadata, which it does not, it is impossible for Zazzle to delete CMI from Plaintiff's images by deleting metadata because there is no CMI in the metadata of Plaintiff's illustrations to delete.

### 4. Zazzle cannot delete CMI that was never present and could not know that a third party was not the copyright owner.

Plaintiff has argued that "Defendant has violated 17 U.S.C. §1202(b)(3) by distributing 'copies of works'…'knowing that the copyright management information has been removed or altered without authority of the copyright owner.'" Doc. 153 at 3. This argument relies on two propositions: (1) that there is CMI to remove and (2) that Zazzle knew that the third party who uploaded the image was not the copyright owner. Both of these propositions require factual allegations that Plaintiff has not and cannot allege.

Plaintiff has not and cannot allege that Zazzle deleted CMI from his alleged images that were uploaded by a third party. Plaintiff only has alleged that Zazzle deletes metadata. It is undisputed that not all metadata includes CMI. In fact, none of the metadata for the images on Plaintiff's own website includes CMI. Plaintiff has not identified any website or other copy of his illustrations that includes CMI in the metadata of Plaintiff's illustrations.

---

[6] http://www.merriam-webster.com/dictionary/metadata

Further, even if images were scanned those scans would not include CMI in the metadata because any metadata would be associated with the scan, not the hard copy of the image. Zazzle cannot delete CMI that does not exist.

Plaintiff has not and cannot allege in good faith that Zazzle knowingly removed CMI without the permission of the copyright owner.   Setting aside the fact that Zazzle does not delete metadata, it is undisputed that Zazzle requires all of its users to sign a user agreement. That user agreement requires users to provide Zazzle with a license that allows it to modify the uploaded content.  RJN, Exhibit 1 – Zazzle User Agreement at Z000006 ("You retain all ownership rights to your Content submitted to the Site.  By submitting Content to Zazzle, you grant Zazzle a nonexclusive, worldwide, transferable license to use, copy, reproduce, modify, publicly display, and distribute your Content.").  Zazzle has the user's permission, via the user agreement, to modify the content, including any CMI, of any uploaded image.  Zazzle also requires users to agree to not "upload, download, post, email or otherwise transmit any Content that may infringe any patent, trademark, trade secret, copyright or other intellectual or proprietary right of any party."  *Id*. at Z000002.   Not only would Zazzle have no reason to know that a user who uploads an image is not the copyright owner, Zazzle has reason to believe that the user who uploads the image is the copyright owner.

Plaintiff is attempting to use this statute to hold Zazzle liable for allegedly deleting information that (a) the user expressly permitted Zazzle to do, and (b) for which the user retains access to the original information.  That result is both illogical and contrary to the intent of Congress.  Plaintiff made a conscious choice not to include CMI in the metadata of his images.  Having made that choice, Plaintiff was unable to allege facts in the Amended Complaint to support a claim that his CMI was deleted.  Even if Zazzle deleted metadata,

which it does not, 17 U.S.C. §1202 does not preclude Zazzle from deleting metadata that never included CMI.

## CONCLUSION

Under any theory of liability—primary or secondary—Plaintiff fails to state a claim against Zazzle for copyright infringement or violation of 17 U.S.C. §1202.[7]  As such, Zazzle respectfully requests an Order dismissing Plaintiff's Complaint in its entirety for failing to state a claim upon which relief may be granted.

Dated:  January 2, 2015                                  Respectfully Submitted,


By: s/Sara Gillette
      Juliet A. Cox, KS #17016
      Sara Gillette, KS #26573
      Samuel L. Blatnick, *pro hac vice*
      Attorneys for Defendant Zazzle, Inc.
      KUTAK ROCK LLP
      2300 Main Street, Suite 800
      Kansas City, MO  64108
      (816) 960-0090 (Telephone)
      (816) 960-0041 (Facsimile)
      juliet.cox@kutakrock.com
      sara.gillette@kutakrock.com
      samuel.blatnick@kutakrock.com

---

[7] Because each of Plaintiff's substantive claims for relief fails, so too must his claim for injunctive relief (Count VI).

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/Sara Gillette
Juliet A. Cox, KS #17016
Sara Gillette, KS #26573
Samuel L. Blatnick, *pro hac vice*
Attorneys for Defendant Zazzle Inc.
KUTAK ROCK LLP
2300 Main Street, Suite 800
Kansas City, MO  64108
(816) 960-0090 (Telephone)
(816) 960-0041 (Facsimile)
juliet.cox@kutakrock.com
sara.gillette@kutakrock.com
samuel.blatnick@kutakrock.com