**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

JOSEPH R. TOMELLERI,

     Plaintiff,

v.

ZAZZLE, INC.

     Defendant.

Case No.: 13-cv-2576 EFM/TJJ

### ZAZZLE, INC.'S MEMORANDUM IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE THE PROFFERED EXPERT TESTIMONY OF JEFF SEDLIK

Defendant, Zazzle, Inc. ("Zazzle"), moves the Court for an order excluding the proffered expert report and testimony of Jeff Sedlik, Plaintiff Joseph Tomelleri's designated expert on various issues relating to Zazzle's purported use of Plaintiff Joseph Tomelleri's ("Plaintiff" or "Tomelleri") illustrations and Zazzle's affirmative defenses. *See* (ECF 268 at Ex. 6, Pl. Am. Rule 26(a)(2) Disclosure).

Mr. Sedlik is a trained, professional photographer. Mr. Sedlik does not have any formal training or education as a computer scientist, a computer programmer, or an attorney. However, Mr. Sedlik intends to offer his unsubstantiated, largely irrelevant, and often facially incorrect opinions that (1) Zazzle removes metadata from images uploaded to its website by third parties, and (2) Zazzle can, and should, implement image-recognition technology that supposedly would prevent third-party users from uploading Plaintiff's images to its website and allow Zazzle to identify instances of such conduct. Beyond lacking the requisite background to render such opinions, the methodology Mr. Sedlik used to reach his conclusions is not reliable. Mr. Sedlik also intends to offer opinions concerning legal conclusions, not properly the subject of expert testimony and beyond the scope of his knowledge, training or expertise, as well as "opinions" that are nothing more than a recitation of Plaintiff's factual allegations.

I.      **STATEMENT OF THE MATTER BEFORE THE COURT**

Zazzle moves the Court to exclude the report and testimony of Mr. Sedlik, because his qualifications, methodology and opinions fail to satisfy the requirements of Fed.R.Evid. 702, *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993) ("*Daubert*"), and *Daubert's* progeny.

II.     **STATEMENT OF THE FACTS**

    A.      **Mr. Sedlik's Proffered Opinions.**

Plaintiff asserts claims against Zazzle for alleged violations of the Copyright Act (17 U.S.C. § 503, *et seq.*) and the Digital Millennium Copyright Act, 17 U.S.C. § 1202, *et seq.*, (the "DMCA"), based on images that were uploaded by third-party users of Zazzle's website for inclusion on products offered for sale through Zazzle's website.  *See generally* (ECF 177). Plaintiff has designated Mr. Sedlik as an expert on various issues relating to Zazzle's purported use of Plaintiff's illustrations, including "the alleged unlawful use of [his] copyrights and artworks by Zazzle," and on matters related to "Zazzle's affirmative defenses."  (Ex. 1, p. 1).

Mr. Sedlik opines that Zazzle must adopt certain undefined image-recognition search technology in order to comply with copyright law, and that doing so would allow Zazzle to identify all instances where Zazzle users may have uploaded Plaintiff's illustrations to its website.  (Ex. 1, p. 9).  Mr. Sedlik also presents an eight-step process that he created and performed for this lawsuit "to determine whether Zazzle strips metadata from its files."  (Ex. 2, p. 160, lns. 3-4) (the "Metadata Test").  Although not relevant to any issue in this case, Mr. Sedlik's claim that his Metadata Test definitively shows that Zazzle strips metadata from files uploaded to its website by third-party users is simply wrong.  (*Id.*).  Mr. Sedlik also explains that Tomelleri searched Zazzle's website for all products tagged with the keyword "fish" and that

he was able to review only 12,000 of the almost 1.8 million search results.[1]  Mr. Sedlik boldly speculates that the images Tomelleri *did not* review or otherwise analyze "are likely to include additional unauthorized reproductions of [Plaintiff's] images."  (Ex. 1, p. 8).  Mr. Sedlik also seeks to offer several legal opinions and irrelevant commentary regarding copyright licensing and metadata in general.

> ### B.    Mr. Sedlik is not qualified to provide expert testimony on issues relating to metadata, copyright law, or image-recognition search technology.

Mr. Sedlik is a professional photographer.  (Ex. 1, p. 1).  Mr. Sedlik attended the University of California at Santa Barbara ("UCSB") from 1980 to 1983, where he enrolled in "liberal studies" classes with an emphasis in art, art history, economics, and business management.  (Ex. 1, *Curriculum Vitae*).  Mr. Sedlik did not graduate from UCSB.  (Ex. 2, p. 27, lns. 13-17).  Mr. Sedlik transferred to the Art Center College of Design, where he earned a Bachelor of Fine Arts Degree in 1986.  (*Id.*).  Mr. Sedlik also was awarded an "honorary degree" in 2008 from the Brooks Institute, a photography and film school located in Santa Barbara, California, for his "mastery of the craft and achievement in the [photography] industry."  (Ex. 2, p. 18, lns. 15-18).  Mr. Sedlik has no postgraduate training or earned degrees.  (Ex. 2, p. 18, lns. 19-24).  Mr. Sedlik never enrolled in law school and is not an attorney.  (Ex. 2, p. 19, lns. 2-5).  Mr. Sedlik holds no certifications.  (Ex. 2, p. 19, lns. 21-23).

Mr. Sedlik has received no formal education or training in computer hardware or software.  *See* (Ex. 1).  During his deposition, Mr. Sedlik refused to answer the question: "Are you a computer hardware expert?"  (Ex. 2, p. 13. lns. 6-19).[2]  Mr. Sedlik acknowledged that he has assembled fewer than ten computers in his lifetime, and he has never designed computer

---

[1] Zazzle made its database available to Plaintiff, so he could review every image.  Plaintiff declined that offer.  *See* (Ex. 5).

[2] Thus, Mr. Sedlik does not purport to be an expert in computer hardware.

hardware.  (Ex. 2, p. 13, lns. 19-24).  Mr. Sedlik claims to possess experience in "software project management."  (Ex. 2, p. 14, lns. 11-15).  According to Mr. Sedlik, he has "managed the development of applications for both web-based applications and client-based applications for the last 10 years in relation to images."  (Ex. 2, p. 14, lns. 20-24).  The management of applications, however, is different from the technical methodologies and limitations inherent within software design and functionality.[3]

Mr. Sedlik has no formal training or education in image-recognition search technology.  (Ex. 2, p. 16-lns. 7-8); (Ex. 1, *curriculum vitae*).  Mr. Sedlik concedes that his "expertise in the subject does not include the development of image-recognition technology."  (Ex. 2, p. 16, lns. 23-25).  Mr. Sedlik also admits that he has no experience tuning the algorithms required to accurately implement an image-recognition search.  (Ex. 2, p. 253, lns. 5-14).  However, Mr. Sedlik claims to be an expert on the subject of procuring and using image-recognition search technology, based upon "meeting with scientists, who are developing image-recognition technology," and by retaining third-party image-recognition service-providers and testing their product offerings.  (Ex. 2, p. 15, ln. 23 to p. 16, ln. 8).  Thus, Mr. Sedlik claims somehow to have become an expert by talking to others who actually may possess such expertise.

---

[3] *See, e.g.,* Hayim Makabee, *Attention Agile Programmers:  Project Management is not Software Engineering* (Jan. 20, 2014), http://effectivesoftwaredesign.com/2014/01/20/attentionagile programmersprojectmanagementisnotsoftwareengineering.  Mr. Makabee is a veteran software developer who currently works as a Research Engineer for Yahoo! Labs.  In his article, Mr. Makabee explains the difference between certain tasks performed by software project managers and by software engineers.  For example, Mr. Makabee explains:  "Professional software developers must be able to compute the complexity of the algorithms they are adopting in their systems….  They should understand the difference between best, worst, and average case complexities.  Computing algorithm complexity is a software engineering activity, essential to ensure the quality of systems being developed."

4829-6983-7348.3

## III.    STATEMENT OF THE QUESTIONS PRESENTED

Does Mr. Sedlik possess the education, training or experience necessary to provide expert testimony concerning the efficacy of image-recognition search technology, and whether Zazzle is legally required to use such technology to identify and protect against copyright infringement?

Does Mr. Sedlik possess the education, training or experience necessary to provide expert testimony concerning legal issues?  If so, are Mr. Sedlik's legal opinions the proper subject of expert testimony?

Does Mr. Sedlik possess the education, training or experience necessary to provide expert witness testimony regarding Zazzle's use of metadata?  If so, is Mr. Sedlik's Metadata Test relevant to any issue in this case and grounded in reliable methodology, or will testimony concerning his Metadata Test simply mislead the trier of fact as to what issues are relevant to this case?

Is Mr. Sedlik allowed to provide "expert" testimony that is nothing more than a recitation of Plaintiff's factual allegations?

Is Mr. Sedlik allowed to provide purely speculative testimony that the portions of Zazzle's database that he could have, but did not, review contain additional images of Plaintiff's works, even though Mr. Sedlik performed no analysis to form such an opinion?

May Mr. Sedlik provide "expert" testimony on general information regarding licensing and metadata that do not bear directly on any issue to be decided by the jury in this case?

## IV.    ARGUMENT

### A.    The Court's Gatekeeping Function Empowers it to Determine the Admissibility of Expert Testimony.

Fed. R. Evid. 104(a) empowers the Court to determine preliminary questions concerning the qualifications of witnesses and the admissibility of evidence.  Fed. R. Evid. 702 sets forth the

following threshold requirements governing the admissibility of expert testimony: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

Rule 702 requires a court to act as a gatekeeper for any proffered expert testimony. *Daubert*, 509 U.S. 579, 597; *see also* 2001 *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999); *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). As part of its gatekeeping function, the Court must exercise care "to assure that a proffered witness truly qualifies as an expert." *Jinro America, Inc. v. Secure Inv., Inc.* 266 F.3d 993, 1004 (9th Cir. 2001). "[T]he proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." *Windham v. Circuit City Stores, Inc.*, 420 F.Supp.2d 1206, 1211 (D. Kan. 2006).

The first precondition of any expert testimony is that the proposed witness possesses "scientific, technical or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." *Williams v. Illinois*, 132 S.Ct 2221, 2241 (2012), *quoting* Fed.R.Evid. 702. If the expert is qualified, then the Court must determine whether the expert's testimony is both reliable and relevant. *United States v. Rodriquez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006); *see also Ralston,* 275 F.3d at 969.

Expert testimony is relevant if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. 579, 590. Thus, to be relevant, an expert's testimony must be "beyond the realm of common experience and ... require the special skill and knowledge of [the] expert witness." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d

1207, 1214 (10th Cir. 2011); *see also Moses v. Payne*, 555 F.3d 742, 756 (9th Cir. 2008) (expert testimony must "concern[] matters beyond the common knowledge of the average layperson and [not be] not misleading.").

Reliability questions may concern the expert's data, method, or application of the method to the data. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Expert testimony is reliable if it has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). "The Court should generally focus on the expert's methodology rather than the expert's conclusions, but the conclusions must be connected to the existing data by more than the *ipse dixit* of the expert." *Windham,* 420 F.Supp.2d at 1211, *citing Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003).

An expert may not offer opinions based on sheer *ipse dixit. Id.; see also General Electric Co v. Joiner*, 522 U.S. 136, 146 (1997). Admissible expert opinion must be sufficiently based in fact, well-reasoned, and not speculative. *Id.* It is mandatory that "an expert must back up his opinion with specific facts." *City of Chanute, Kan. v. Williams Natural Gas Co.*, 743 F.Supp. 1437, 1445 (D. Kan. 1990), *quoting Guidroz-Brault v. Missouri Pac. R.R Co.*, 254 F.3d 825, 831 (9th Cir. 2001). If an expert's testimony is not based on sufficient facts, it should be excluded. *See id.* A proffered expert opinion is inadmissible as a matter of law if it fails to show that it is (1) based upon specialized knowledge of the expert and (2) helpful to the finder of fact. *See Dow v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589-91 (1993).

> **B.    Mr. Sedlik does not have specialized or technical knowledge that qualifies him to provide expert testimony on issues relating to image-recognition search technology.**

Mr. Sedlik claims that Zazzle should employ image-recognition search technology for the purpose of identifying all instances where Zazzle users might have uploaded Plaintiff's illustrations to Zazzle's website. (Ex. 1, p. 9). In his report, Mr. Sedlik claims that image-

recognition search technology would enable Zazzle to search its entire image database for Plaintiff's illustrations "in seconds." (*Id.*).

During his deposition, Mr. Sedlik explained that performing the image-recognition search described in his report actually is a two-step process. (Ex. 2, p. 247, lns. 7-15). If Zazzle were to conduct such a search, it first would be necessary for it to "fingerprint" each of the images contained in its database.[4] (*Id.*). Only after that step had been accomplished would it be possible for Zazzle to conduct an image-recognition search. (*Id.*). Mr. Sedlik admitted that, contrary to the timeframe set forth in his report ("in seconds"), he learned after talking to a third-party vendor that such a process might actually take "two to three weeks" and perhaps as long as "30 days." (Ex. 2, p. 247, lns. 16-19; Ex. 2, p. 254, lns. 19-20).

On Mr. Sedlik's own admission, fingerprinting is an integral part of conducting an image-recognition search. (Ex. 2, p. 247, lns. 7-15). Unfortunately, fingerprinting is a technical subject on which Mr. Sedlik has no practical experience. Mr. Sedlik stated in his deposition that, to date, he has not actually "had the occasion to fingerprint <u>any</u> collective database," let alone a database as large as Zazzle's. (Ex. 2, p. 250, lns. 15-16). In lieu of such experience, Mr. Sedlik's opinions are based solely on his communications with a third-party vendor, who indicated that it would be willing to fingerprint Zazzle's database for a fee. Mr. Sedlik explained:

> While I haven't had the occasion to fingerprint any collective database, I consulted with a service provider that I have a relationship with who informed me that we could complete the entire process, not just the fingerprinting, but the search within two to three weeks.

---

[4] Fingerprinting is a very technical process. There are a variety of different techniques by which an image can be "fingerprinted." *See, e.g.*, Kristen Grauman, *Efficiently Searching for Similar Images*, COMMUNICATIONS OF THE ACM, Jun. 2010. (ECF No. 120, Ex. 1). The term "fingerprinting" generally refers to a method to process images in a manner that is required to run an image-recognition search.

(Ex. 2, p. 250, lns. 15-16).[5]    Thus, Plaintiff improperly seeks to introduce the inadmissible hearsay of a third-party vendor under the guise of "expert" testimony from someone who lacks any personal knowledge or experience in this area. *See U.S. v. Pablo*, 696 F.3d 1280, 1288 (10th Cir. 2012) ("If an expert simply parrots another individual's out-of-court statement, rather than conveying an independent judgment that only incidentally discloses the statement to assist the jury in evaluating the expert's opinion, then the expert is, in effect, disclosing that out-of-court statement for its substantive truth; the expert thereby becomes little more than a backdoor conduit for an otherwise inadmissible statement.").

Mr. Sedlik also lacks practical knowledge about the technical processes through which an advanced image-recognition search is performed.    Although Mr. Sedlik claims to have communicated generally with experts at UCLA and Google (who actually are working to develop image-recognition processes) he has no such experience.    (Ex. 2, p. 253, lns. 3-14). Mr. Sedlik can only speculate as to the practical problems that would be encountered while performing such a search.    For example, Mr. Sedlik has no experience tuning the search algorithm used to perform an image-recognition search to avoid false positives, which he concedes is "a very, very complex process."    (Ex. 2, p. 253, lns. 5-14).    Likewise, Mr. Sedlik can only provide a ballpark estimate as to the cost Zazzle would have to pay to conduct an advanced image-recognition search, saying that he probably could "get it done [by a third party] for under $12,000," but that Zazzle should consult with vendors to get a formal price quote.    (Ex. 2, p. 254, ln. 21 to p. 255, ln. 5).

---

[5] The third-party vendor at issue did not contact Zazzle and has never performed work for Zazzle.  Thus, the vendor lacks sufficient firsthand knowledge upon which to base its quote or representation that such work is even feasible.

Mr. Sedlik does not have the technical and specialized knowledge necessary to opine on whether Zazzle can or should employ advanced image-recognition search technology. All of his opinions on this subject, including his comment that "it is much less burdensome for Zazzle to electronically prevent infringement before it happens than for [Plaintiff] to attempt to locate infringements after they happen," are purely speculative and illogical.[6]  (Ex. 1, p. 23).  To the extent that Plaintiff sought an expert to comment on the capabilities of advanced image-recognition search technology, it should have retained one of the vendors suggested by Mr. Sedlik or, perhaps, the individuals at UCLA or Google Mr. Sedlik referenced, who actually are working to develop the field. Mr. Sedlik, however, lacks the requisite training, education, or experience to testify on such matters as an "expert." It is not surprising that Plaintiff does not have an expert knowledgeable about the technical requirements and limitations of image-recognition software, because the technology is simply not sufficiently developed or robust to accomplish what Mr. Tomelleri (and Mr. Sedlik) wish it would accomplish. Perhaps in the future, it will be, but currently it is not. (Ex. 9, p. 59).

---

[6] According to Plaintiff, infringement occurs <u>when</u> a third party uploads an infringing image to Zazzle's site. Such images would not be available to Zazzle to send to a third-party vendor to fingerprint and search until <u>after</u> they were uploaded to Zazzle. Therefore, Mr. Sedlik utterly fails to explain how employing image-recognition search technology would prevent infringement "before" it happens. Further, Mr. Sedlik ignores that image-recognition searches require a database of images to search against. He offers no opinion on how Zazzle could create such a database that is reliable. Indeed, given that Zazzle's primary users are artists and designers, nearly every work uploaded to Zazzle has someone who claims ownership of the work. Zazzle essentially would have to search its entire database against its entire database, which is an untenable proposition. Every user signs a user agreement representing that the user owns or licenses the right to every uploaded image. (Ex. 8, p. 16, lns. 8-18). Given this fact, Zazzle presumably would then have to independently verify the accuracy of each of these representations, which essentially would require it to render legal opinions. In addition, the very act of "fingerprinting" would require moving or copying images to a third-party vendor. During the 30-day period Mr. Sedlik's vendor estimated it would take to run a search, additional images would be uploaded to Zazzle, creating an ongoing requirement to spend tens of thousands of dollars for an unreliable search. Mr. Sedlik ignored these facts—likely because his vendor failed to mention them.

### C.        Image Recognition Technology is Not Reliable

Under Daubert, the Court is charged with evaluating the reliability of a proffered expert's testimony against four criteria:  (i) whether the methods upon which the testimony is based are centered on a testable hypothesis; (ii) the known or potential rate of error associated with the method; (iii) whether the method has been subject to peer review; and (iv) the general acceptance of the method within the professional community.  Daubert, 509 U.S. at 592-95.  Mr. Sedlik's process of speaking with a vendor is not a reliable methodology.  Mr. Sedlik did not run any search using image-recognition software or otherwise employ any methodology to support his speculative opinions.  He merely spoke with a third-party vendor eager to be retained and who had no information concerning Zazzle's database.  Plaintiff fails to present articles or other materials generally relied upon by professionals in the image-recognition software field to support Mr. Sedlik's conclusions concerning the availability and efficacy of such software, or the acceptance of such software for the purposes Mr. Sedlik claims it should be used.  Mr. Sedlik's testimony is pure *ipse dixit* and rank speculation.

The Court noted in its December 5, 23014 Order and Opinion that "Plaintiff has presented no evidence that the technique [image recognition software] is feasible or would produce relevant results."  (ECF 160 at p. 6).  Plaintiff still has failed to satisfy its burden.  The use of content-based image-recognition software[7] to search large databases to identify specific images is not reliable and does not satisfy *Daubert*.[8]  Image-recognition software is at-best an

---

[7] Conventional image-recognition software searches the metadata or keywords associated with an image.  Because Plaintiff failed to include descriptive metadata for his images, such searches would not identify his illustrations.  Thus, the only potential technique is content-based image-recognition, which seeks to compare the content within the image itself.

[8] Zazzle and its counsel are not aware of a single case where a proponent was allowed to introduce evidence of image-recognition software as a relevant and reliable method of

infant technique.  *See e.g., U.S. v. American Library Ass'n, Inc.*, 539 U.S. 194, 222 (2003) ("Image recognition technology is immature, ineffective, and unlikely to improve substantially in the near future…").  In a November 17, 2014 article in the *New York Times*, Fei-Fei Li, the director of the Stanford Artificial Intelligence Laboratory, was quoted as stating, "I consider the pixel data in images and video to be the dark matter of the Internet …We are now starting to illuminate it."  (article attached as Ex. 6).  Oriol Vinyals, a Google computer scientist, likewise was quoted as stating, "[t]he field is just starting, and we will see a lot of increases." (*Id.*).  In a 2010 article, *Efficiently Searching for Similar Images*, the author explored several potential ways that search techniques might possibly be used to identify similar images.  (attached as Ex. 7). According to the author, "the image search problem [with content-based searching] has become intertwined with the fundamental problem of recognition, in which algorithms must capture higher-level notions of visual object and scene categories.  The technical challenges are considerable." (*Id.* at p. 86) (emphasis added).  With respect to searching large databases, the author further noted that "a naïve linear scan that compares the query against every database image is not feasible … Unfortunately, traditional methods for fast search cannot guarantee low query-time performance for arbitrary specialized metrics." (*Id.* at pp. 91-92).  Therefore, it is clear that the use of image-recognition software is not generally accepted within any professional community.  Instead, it presently is the subject of research and development efforts by scientists at some of the most prestigious research universities and elsewhere.

Because the field is just beginning, there likewise is no reliable data that provides the rate of error for such a technique.  The authors in the preceding article concluded that "a practical issue for evaluating algorithms in this space is the difficulty of quantifying accuracy for truly

identifying specific images from within a database such as Zazzle' massive database, which contains approximately 200 million images.

4829-6983-7348.3

massive databases; the data itself is easy to come by, but without ground truth annotations, it is unclear how to rigorously evaluate performance." (*Id.* at p. 94). Put simply, without knowing what a database contains in the first instance, it is impossible to determine the accuracy of a search. That is the exact issue here. Contrary to the clear opinions of those who actually work in the field, Mr. Sedlik claims Zazzle can simply waive a "magic wand," and he is confident that Plaintiff's images would all be identified.

### D.    Image-Recognition Software Is Not Relevant to Any Issue in This Case.

The entire purpose for which Mr. Sedlik even discusses image-recognition software is to suggest it could be used to find more alleged infringements. This is pure speculation. Even though Plaintiff was offered Zazzle's database to search, he did not do so by any method, including attempting to use image-recognition technology. Indeed, Mr. Sedlik offers no opinion regarding image-recognition technology that is probative of any issue the jury will be asked to decide. In the event Plaintiff's claims are not dismissed on summary judgment, the jury will be asked to decide whether Tomelleri has valid copyrights and whether Zazzle infringed any such valid copyright. The jury also may be asked to decide whether Zazzle violated the DMCA. The jury will not be asked, under any circumstance, to speculate as to whether other infringements that neither Zazzle nor Plaintiff have identified might exist. Thus, the entire discussion of image-recognition software is simply a red herring.

### E.    Mr. Sedlik lacks sufficient education to opine on legal issues, and purports to offer several legal opinions that are not the proper subject of expert testimony.

Mr. Sedlik offers several legal opinions and legal arguments (without supporting facts) in his report, including the following:

- "The removal or alteration of embedded metadata without the permission of the party who embedded that metadata is a violation of widely adopted industry guidelines and can violate 17 U.S.C. § 1202." (Ex. 1, p. 17).

- Plaintiff "is permanently and incurably harmed by Zazzle's exploitation and alleged infringement of the images." (Ex. 1, p. 21).

- "[Plaintiff's] litigation costs will exceed [Zazzle's] infringing product revenues. Unless the Court permanently prohibits Zazzle from further reproduction, distribution, display and modification of the images, [Plaintiff] faces the risk of spending more than he can recover from future infringement litigation with the Defendant." (Ex. 1, p. 22).

- "A court order permanently prohibiting Zazzle from further reproduction, distribution, display and modification of the Images would merely require Zazzle to stop infringing on [Plaintiff's] copyrights and would not give rise to unreasonable burdens on either party." (Ex. 1, p. 23).

- "Zazzle is not an ISP under the statute." (Ex. 2, p. 232, lns. 16-17) Retaining metadata is "something that Zazzle has the obligation to do legally." (Ex. 2, p. 237, lns. 22-23).

Mr. Sedlik is not an attorney and has no legal education. (Ex. 2, p. 238, ln. 23 to p. 239, ln. 3). Mr. Sedlik has never taken a course on statutory interpretation. (Ex. 2, p. 238, lns. 16-22). Thus, even if his legal opinions properly were the subject of expert testimony, Mr. Sedlik is not qualified to proffer them.

Mr. Sedlik's legal opinions, however, are not the subject of proper expert testimony. An expert's role is to provide opinion testimony that will *assist the jury* in understanding the evidence or determining a fact in issue. *See Williams*, 132 S.Ct at 2241. An expert may not opine on an ultimate issue of law. *See Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988) (observing that "testimony on ultimate issues of law by the legal expert is inadmissible because it is detrimental [and harmful to] to the trial process."). "In no instance can a witness be permitted to define the law of a case." *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1246 (10th Cir. 2000) (internal citations omitted). "Expert testimony on legal issues crosses the line between the permissible and the impermissible when it attempts to define the legal parameters within which the jury must exercise its fact finding function." *See id.* (explaining that an expert that applies the facts of a case to proffered law prohibits the jury from fully exercising its fact-finding

14

function, and therefore offers improper testimony); *see also Hanngarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("[A]n expert witness cannot give an opinion as to her *legal conclusion*, *i.e.*, an opinion on an ultimate issue of law."). Therefore, an expert cannot provide opinion testimony on matters that are solely within the discretion of the Court.

By asserting that Zazzle has violated its obligations under the copyright laws by allegedly not maintaining metadata and by commenting on its ISP status, Mr. Sedlik has crossed the bright line established by the Tenth Circuit. He should not be permitted to present any testimony concerning his opinions related to the legality of Zazzle's conduct or the legality of conduct in any hypothetical situation. Further, his opinions regarding irreparable harm, undue burden and the need for a permanent injunction are issues for the Court, not the jury, to decide. *Lundrin v. Clayton*, 619 F.2d 61, 63 (10th Cir. 1980). Accordingly, those opinions will not assist the jury.

  **F. Mr. Sedlik's opinions regarding Zazzle's use of metadata is neither relevant nor grounded in reliable principles.**

   **1. Mr. Sedlik's Metadata Test is not grounded in relevant or reliable principles.**

Mr. Sedlik's Metadata Test consists of an eight-step procedure that is designed "to determine whether Zazzle strips metadata from files." (Ex. 2, p. 160, lns. 3-4). Mr. Sedlik describes these eight steps as follows:

1. Create source image ("Tom Test JPG C.jpg").
2. Embed test metadata into source image.
3. Register and create account at Zazzle.com.
4. Create a product; upload "Tom Test JPG C.jpg." ("Zazzle – Screenshot of Image on Site.jpg").
5. Post product for sale. ("Zazzle – Screenshot of Image on Product on Site.jpg").
6. Search Zazzle for product created, using query "Copyright Symbol Tee." Find image of product that was created in the grid list of all products returned by the search query.
7. Right click on the product that was created, and save it to disk. (Renamed to "Zazzle – Image Downloaded from Zazzle Site with Zazzle License Verbiage.jpg").

8. Utilizing exiftool, extract metadata from both "TOM Test JPG C.jpg" and "Zazzle-Image Downloaded from Zazzle Site with Zazzle License Verbiage.jpg") ("Image Metadata Retention Analysis").

(Ex. 1).  In other words, Mr. Sedlik simply uploaded a test image (with metadata) to Zazzle's website (the "Test Image"), combined that image with images already available on Zazzle's site to create a composite image of a person wearing a T-shirt with the Test Image on it (the "Product Image"), downloaded the Product Image, and ran a metadata analysis to compare the metadata from the original Test Image to the metadata from the Product Image.  Mr. Sedlik assumes that if the Product Image had different metadata than the Test Image, then Zazzle must have stripped the metadata from the Test Image.

This methodology is fundamentally flawed because it improperly compares the metadata associated with an original image (*e.g.*, the Test Image) and a separate, **composite image** (*e.g.*, the Product Image).  Because the images are different, they necessarily will possess different metadata.  As explained by Zazzle's founder, Robert Beaver:

> Any composited image would not include metadata from the assets that comprised it, because fundamentally metadata is intended to describe whatever it surrounds.  Any anything that's been combined or otherwise modified is definitionally different.  So as an example, if this bumper sticker were to be manufactured, we could not include the metadata from the fish image because the metadata from the fish image includes pixel information that's no longer relevant to the final composited result.

(Ex. 4, p. 104, ln. 24 to p. 105, ln. 9).  In other words, every unique image does and should have its own unique metadata.  In circumstances where one image (*e.g.*, the Test Image) is combined with another image (*e.g.*, the product component) to create a composite image, then the new image (*e.g.*, the Product Image) will have its own, unique metadata.[9]

---

[9] Mr. Sedlik concedes that he compared metadata from entirely different images.  Mr. Sedlik confirmed in his deposition that the Product Image is not the same as the Test Image: "By the very nature of the term I've been using, it would indicate that they are not the same.  I've been

16

Mr. Sedlik's test effectively compares apples to oranges (or, in this case, a picture of a copyright logo to a picture of a t-shirt made using part of that copyright logo).  Mr. Sedlik's Metadata Test has been performed only once, but no matter how many times it is run and regardless of the circumstances, it always will result in the derivative image having different metadata from the original image, regardless of whether the metadata associated with the Test Image has or has not been altered.  Indeed, Mr. Sedlik conceded – in sharp contrast to his opinion that Zazzle strips metadata -- that "I could see with certainty that Zazzle had maintained all of the metadata in its original file [the Test Image] on the unnamed server on which Zazzle stores the original images with this metadata …" (Ex. 2, p. 207, lns. 22-23).  Thus, Mr. Sedlik's Metadata Test is not relevant, not reliable, and will not aid the jury.  Moreover, the "potential rate of error" is 100%, because the method's result does not satisfy its intended objective.

Plaintiff likewise fails to support its burden of establishing that Mr. Sedlik's "method" has been subject to peer review or is generally accepted within any professional community, as required by *Daubert*, 509 U.S. at 592-95.  Plaintiff could not satisfy this burden, because Mr. Sedlik's methodology is inherently flawed.  Due to these inherent flaws, this Court should bar Mr. Sedlik from providing testimony regarding his Metadata Test and all opinions resulting therefrom.

### 2.    Plaintiff did not affix copyright management information to any of the images at issue in this lawsuit, making Mr. Sedlik's incorrect opinion as to how Zazzle treats metadata irrelevant.

Mr. Sedlik uses his Metadata Test to support his opinion that "Zazzle strips metadata from files" uploaded to its website.  (Ex. 2, p. 160, lns. 3-4).  17 U.S.C.§ 1202(b) only prohibits

---

calling it a derivative for the last ten minutes." (Ex. 2, p. 153, ln. 10).  Mr. Sedlik also conceded that the Product Image is a "composite image."  (Ex. 2, p. 160, lns. 5-8).

altering or removing copyright management information ("CMI"), not metadata.[10]   Mr. Sedlik's

opinion regarding metadata is therefore irrelevant to the facts at issue in this case, because

**Plaintiff's illustrations contained no CMI** at the time they allegedly were uploaded to Zazzle's

website.   Plaintiff admits that he only recently started adding CMI to his image files.   (Ex. 2,

p. 248, lns. 1-7).   No such CMI was affixed to any of the image files uploaded to Zazzle's

website by third-parties that allegedly contain Plaintiff's images.   (Ex. 3, p. 248, ln. 6).   This fact

is confirmed by documents produced by Zazzle in this lawsuit[11] and further acknowledged by

Mr. Sedlik himself.   *See* (Ex. 2, p. 135, lns. 12-13) ("I don't think [Plaintiff] adopted "metadata"

for use consistently").

　　Thus, even if Zazzle did strip metadata from uploaded image files (which it does not),[12] it

is irrelevant because the image files at issue in this lawsuit contained no CMI in the first place.

Mr. Sedlik's opinion, therefore, has no bearing on any issue in this case, and likely would

---

[10] CMI is defined as:

　　any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:

　　(1) The title and other information identifying the work, including the information set forth on a notice of copyright.

　　(2) The name of, and other identifying information about, the author of a work.

　　(3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

　　…

　　(6) Terms and conditions for use of the work.

　　(7) Identifying numbers or symbols referring to such information or links to such information.

　　(8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.

17 U.S.C. §1202(c).

[11] Dec. of Brandon Law (ECF 277) at ¶¶13-15; referring to files described in the Second Dec. of Robert I. Beaver III (ECF 276); Dec. of Tony Ly (ECF 278) at ¶24 (visual CMI).

[12] Mr. Sedlik admits that Zazzle separately maintains all metadata associated with user-submitted files.   (Ex. 2, p. 207, lns. 22-23).

18

confuse and mislead the jury as it relates to the facts that are at issue. *See Daubert*, 509 U.S. at 589 (expert testimony must be relevant and reliable).

> **G.    Mr. Sedlik should not be permitted to testify regarding the allegations made in Plaintiff's complaint, because he lacks firsthand knowledge of such allegations.**

Mr. Sedlik intends to provide testimony regarding allegations made by Plaintiff in its First Amended Complaint. (ECF 177). For example, in Sections A and C of his report, Mr. Sedlik recites Plaintiff's allegation that Zazzle has used sixty-three of Plaintiff's allegedly copyrighted images without authorization. (Ex. 1, p. 7, 10). In Sections D and E of his report, Mr. Sedlik recites the various ways in which Plaintiff alleges that Zazzle infringed on his copyrights, such as by "making, displaying and distributing unauthorized derivative reproductions of the images on various products offered for sale by Zazzle on Zazzle websites and on websites operated by third parties." (Ex. 1, pp. 10-11).

Mr. Sedlik should not be permitted to provide any such lay testimony to the jury. *See Montoya v. Sheldon*, 286 F.R.D. 602, 619 (D. N.M. 2012) (noting that where an expert witness provides lay testimony, such lay testimony must be "rationally based" on his perceptions and "helpful to determining a fact in issue."). Mr. Sedlik has no firsthand knowledge of Plaintiff's allegations, and he purportedly relies on his conversations with the Plaintiff to support his recitation of the same in his report. (Ex. 1, p. 8, FN 7) (citing telephone interview of Plaintiff as support for statements made in Section A of the report). Mr. Sedlik may not comment on these matters to the jury with the imprimatur of his supposed expert credentials. *Rosenfeld v. Oceania Cruises, Inc.*, 682 F.3d 1320, 1340 (11th Cir. 2012) (cautioning that "the expert's testimony may lend undue credence to one party's view of the facts because that testimony bears the imprimatur of an expert.").

**H.      Mr. Sedlik should not be permitted to offer speculative opinions regarding Plaintiff and Zazzle.**

It is well settled that an expert may not offer opinions based on sheer *ipse dixit*. *Heer v. Costco Wholesale Corp.*, 589 Fed.Appx. 854, 861 (10th Cir. 2014), *citing General Electric Co v. Joiner*, 522 U.S. 136, 146 (1997). Admissible expert opinion must be sufficiently based in fact, well-reasoned, and not speculative. *Id.* "[A]n expert must supply more than a bottom line to be of value to the judicial process...". *Qualls v. State Farm Lloyds*, 226 F.R.D. 551 557 (N.D. Tex. 2005). It is mandatory that "an expert must back up his opinion with specific facts." *City of Chanute, Kan. v. Williams Natural Gas Co.*, 743 F.Supp. 1437, 1445 (D. Kan. 1990), *quoting Guidroz-Brault v. Missouri Pac. R.R Co.*, 254 F.3d 825, 831 (9th Cir. 2001). If an expert's testimony is not based on sufficient facts, it should be excluded. *See id*. Mr. Sedlik seeks to offer several opinions regarding Plaintiff and Zazzle that are not based upon any facts or any methodology.

**1.      Mr. Sedlik's opinion that "thousands of additional Tomelleri images may be in use on Zazzle.com without such keywords, or with different keywords" is not supported by facts of any kind.**

Mr. Sedlik explains in his report that Mr. Tomelleri executed a search on Zazzle's website for all items tagged with the keyword "fish," and that his search generated 1,773,274 results. (Ex. 1, p. 8). Mr. Sedlik stated that Mr. Tomelleri was able to view only 12,000 of these search results due to limitations in Zazzle.com's search functionality (which allows him to view a maximum of 100 pages containing 120 images per page). He concludes that the remaining 1,761,274 results were "hidden." (*Id.*) Mr. Sedlik then speculates that "it is entirely possible that [Plaintiff] has yet to discover the majority of the unauthorized uses of his images on Zazzle.com." (*Id.*) Mr. Sedlik further speculates that:

> …the hidden search results are likely to include additional unauthorized reproductions of [Plaintiff's] images **in approximately the same proportion as**

20

**can be found in the first 100 pages**.  Some of these hidden images **may** be the same images returned in the first 100 pages of results.  Some of these images **may** be additional [Plaintiff] images comprising additional alleged infringements by Zazzle.

(Ex. 1, p. 8) (emphasis added).   Mr. Sedlik did not perform any analysis or apply any methodology in reaching this opinion.  His proffered opinion is the very definition of *ipse dixit* testimony, and it  must be excluded by this Court.

Further, Mr. Sedlik's assertion that Zazzle "hid" the remaining images from him is entirely inaccurate.  On October 29, 2014, counsel for Zazzle informed counsel for Plaintiff that Zazzle would make all 1,773,274 search results available to Plaintiff for review.   (Ex. 5).  Plaintiff rejected this offer.  Had Plaintiff chosen to accept Zazzle's offer, any additional images could have been reviewed.  Thus, having rejected Zazzle's offer to grant access to these results, Plaintiff instead seeks to offer speculative "expert" testimony that is based on no methodology or process, and which would have been rendered superfluous if Plaintiff simply had conducted an actual review, as he was given the opportunity to do.

## 2.    Mr. Sedlik's opinion that Zazzle's alleged use of Plaintiff's illustrations permanently harms him is speculative.

Mr. Sedlik suggests that Zazzle's use of Plaintiff's illustrations has permanently harmed him by, for example, interfering with Plaintiff's "actual and prospective relationships with clients who might otherwise compensate [Plaintiff] for the licensed use of the images."   (Ex. 1, p. 20).  Plaintiff has produced no documents or other information that establish, in any way, that Zazzle's alleged use of Plaintiff's images have harmed his licensing efforts.  Mr. Sedlik did not employ any methodology to identify or quantify any such harm, and he fails to identify any specific instances to support his speculative opinion.  For example, Mr. Sedlik could have attempted to analyze Plaintiff's licensing agreements to determine whether there have been adverse changes or any drop in Plaintiff's licensing revenues over the relevant period of time.  He

did not do so.  Because Mr. Sedlik's opinion on this matter is pure speculation, and not a product of any methodology or facts, it must be excluded.

> **I.    Mr. Sedlik's proffered testimony on general information about licensing and metadata will not explain any evidence for the jury or help the jury determine a fact in question.**

Mr. Sedlik intends to provide expert testimony on various general issues relating to metadata and licensing, including the information presented in the following sections of his report:  "Section F.  General Background Regarding Image Copyright Licensing"; "Section G. General Background Regarding the Importance of Licensing Fees for Independent Artists"; "Section H.  General Background Regarding Metadata in Digital Image Files"; "Section I. Embedded Rights Metadata is a Standard Technical Measure"; "Section J. Metadata Standards are Developed Pursuant to a Broad Consensus of Copyright Owners"; "Section K. Image Metadata is Readily Available and Accessible"; and "Section L. The Costs of Metadata".  (Ex. 1, pp. 11-19).

In Section F, Mr. Sedlik provides non-specific information about the different ways in which individuals may obtain image-rights from artists.  (Ex. 1, pp. 11-14).  Mr. Sedlik briefly defines the terms "assignment image" and "stock image," and then goes about explaining the different types of licenses that might be acquired related to stock images.  (Id.).  None of this background information specifically relates to any of Plaintiff's claims or Zazzle's affirmative defenses.  Nor would it help the jury reach a conclusion regarding any fact in question.  Indeed, any such testimony would likely confuse and mislead the jury.  For example, explaining various types of licenses may cause the jury to infer the Plaintiff has each of these types of licenses, when he does not.  Explaining metadata and its potential uses may cause the jury to infer that Plaintiff included CMI in the images at issue, which he did not.  This testimony is therefore irrelevant and misleading and should be excluded pursuant to *Daubert*.

In Section G, Mr. Sedlik observes that "independent artists typically rely on image licensing fees and royalties as a primary income stream" and that "stock artists often rely exclusively on license fees derived from their works." (Ex. 1, p. 14-15). The practices of hypothetical "independent artists" are irrelevant and will not aid the jury in this case. At issue is Mr. Tomelleri, and he is free to testify concerning his licensing fees and royalties and how he believes the allegations in this case have affected any such amounts.

In Section H, Mr. Sedlik briefly discusses the different ways that "cameras…and other devices capable of capturing digital images" record metadata, and the different types of metadata that can result. (Ex. 1, p. 15-16). Similarly, in Section I, Mr. Sedlik observes that "image creators and copyright owners routinely embed copyright management information into digital image files upon distribution to identify and protect their copyright protected works." (Ex. 2, p. 17). The general observations made by Sedlik in each of these sections are entirely irrelevant, because the images in question in this lawsuit contained no CMI at the time they were uploaded to Zazzle's website.

The comments Mr. Sedlik makes in Sections J and K also are irrelevant. In Section J, Mr. Sedlik volunteers meaningless information about the "fair, collaborative, multi-industry" process by which metadata standards are adopted. (Ex. 2, p. 17). In Section K, Mr. Sedlik generally comments that "most image metadata is accessible on a non-discriminatory basis to any person or machine." As with Mr. Sedlik's other observations about metadata, these comments are irrelevant and should not be presented to the jury at trial.

Mr. Sedlik has not tied these topics in any way to any specific fact in dispute. As explained above, the images at issue did not have any CMI at the time they were uploaded to the Zazzle website. Because Plaintiff did not include CMI in his illustrations during the period at

issue, the general topic of metadata and what others may do will only confuse and mislead the jury.

## V.    CONCLUSION

Mr. Sedlik is a photographer who lacks any specialized knowledge or training in computer science.  However, he seeks to offer expert opinions concerning the efficacy and availability of cutting-edge image-recognition software without having undertaken any scientific process to support such opinions, and also proffers opinions concerning the alleged removal of metadata by Zazzle that are based upon a fundamentally flawed methodology.  Mr. Sedlik's opinions on these and other matters are outside of his areas of expertise and are not based upon proper scientific methodology.  Allowing Mr. Sedlik to testify would confuse and mislead the jury.  Therefore, Zazzle respectfully requests that the Court exercise its gatekeeping duties and enter an order excluding Mr. Sedlik's proffered expert report and testimony from the trial of this matter.

Dated: June 12, 2015

By:  s/Juliet A. Cox
Juliet A. Cox, KS #17016
Sara Gillette, KS #26573
Samuel L. Blatnick, *pro hac vice*
Attorneys for Defendant Zazzle, Inc.
KUTAK ROCK LLP
2300 Main Street, Suite 800
Kansas City, MO  64108
(816) 960-0090 (Telephone)
(816) 960-0041 (Facsimile)
juliet.cox@kutakrock.com
sara.gillette@kutakrock.com
samuel.blatnick@kutakrock.com

4829-6983-7348.3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/Juliet A. Cox
Juliet A. Cox, KS #17016
Sara Gillette, KS #26573
Samuel L. Blatnick, *pro hac vice*
Attorneys for Defendant Zazzle Inc.
KUTAK ROCK LLP
2300 Main Street, Suite 800
Kansas City, MO 64108
(816) 960-0090 (Telephone)
(816) 960-0041 (Facsimile)
juliet.cox@kutakrock.com
sara.gillette@kutakrock.com
samuel.blatnick@kutakrock.com

4829-6983-7348.3