# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOSEPH R. TOMELLERI,

*Plaintiff,*

vs.

Case No. 13-CV-02576-EFM-TJJ

ZAZZLE, INC.,

*Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Joseph Tomelleri filed this lawsuit against Defendant Zazzle, Inc., alleging direct and indirect copyright infringement and violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §§ 1201 *et seq*.  Defendant has three motions currently pending before the Court:  (1) a Motion to Dismiss (Doc. 182); (2) a Motion for Summary Judgment (Doc. 282); and (3) a Motion to Strike the Affidavit of Joseph Tomelleri (Doc. 311).  For the following reasons, the Court denies the Motion to Dismiss, denies in part and grants in part the Motion for Summary Judgment, and denies in part and grants in part the Motion to Strike Tomelleri's Affidavit.

## I.   Factual and Procedural Background[1]

**Plaintiff's Fish Illustrations**

Plaintiff is a highly-skilled fish illustrator.  Only a few people in the United States perform his type of work.  Plaintiff's illustrations have a reputation for showing exactly what fish look like.  They have appeared in more than 1,000 publications, including more than ninety different magazines, in hundreds of fish identification publications, and in books.  Most of Plaintiff's business is with governmental and private organizations that use the images for identification and advertising, with retailers that use the images on products, and with fish systematists.

Plaintiff generally begins the illustration process by selecting the species of fish he intends to illustrate and collecting specimens and photographs of that fish.  Plaintiff collects the specimens and takes the photographs himself and uses specimens and photographs taken by others.  The photographs are taken immediately after the fish is caught to record the fish's colors as found in nature.  After being photographed, the fish are preserved.  The preservation process changes the color and shape of the fish and also frequently damages fins and other attributes of the specimens.

Accurately photographing fish is difficult because a single photograph does not show all of the diagnostic characteristics of the fish and because photographs are a two-dimensional

---

[1] The Court recognizes the procedural oddity of the three motions pending before it.  Defendant's Motion to Dismiss is still pending despite the fact that the Court has entered the Pretrial Order.  Because the Pretrial Order has been entered in this case, the Court will first address Defendant's Motion for Summary Judgment and Motion to Strike.  To the extent there are any remaining claims after the Court reviews these motions, it will address these claims within the context of the Motion to Dismiss.  Therefore, in accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

representation of a three-dimensional object.  Photographs of fish may have reflections that obscure details about the fish, such as the number of spots on the fish.  In addition, it is not uncommon for fish species to become "bleached" from stress of capture.  Thus, the fish must be held in dark buckets or clear plastic bags of water, typically in shaded areas so that their color may return to normal before photographing.

Plaintiff creates his illustrations by hand, without the aid of a computer; he never traces the specimens. Although each illustration typically takes sixty hours to draw, the time spent on an illustration varies depending on the condition of the specimen, the colors in the fish, the size of the drawing, and other factors.  Before drawing the fish, Plaintiff measures it using a ruler marked in millimeters.  Plaintiff measures the size of the fish and other features, such as the size of the fish's scales, to make sure the proportions of his illustration are exact and the spacing is accurate.  He also occasionally uses a dissection microscope that allows him to see and quantitate details that might not be visible to the naked eye.

Plaintiff then uses the measurements, specimens, and photographs to sketch the fish using a graphite pencil.  Typically Plaintiff draws smaller fish at two or three times the actual size of the specimen.  He draws larger fish smaller than life-size.  Plaintiff draws fish in the "left-lateral view" (with the head of the fish facing left) because any scientific work performed on a specimen (fin clips, pulled scales, tissue samples, etc.) are all performed on the "right-lateral view" of the fish by convention.

The outline of Plaintiff's drawing requires him to make certain assumptions about the fish's measurements because of the difficulty in converting a three-dimensional fish specimen into a two-dimensional fish.  Also, the chemicals used to preserve the fish can distort the shape of the fish.  Plaintiff must also decide how the spread and the disposition of the fins should

appear in the outline.  This is not apparent from the specimen because the fins of the specimen are almost always deflexed and often lay flat against the fish.

After drawing the outline, Plaintiff then typically draws the eye of the fish using his experience, field notes, and photographs.  After completing the eye, Plaintiff then colors the head and the body.  Plaintiff generally uses thirty to forty colors for an illustration.  He attempts to reproduce the color of the fish as accurately as possible by reviewing the photographs taken shortly after the fish is caught.  This can involve subjective judgment, though, because no one really knows the color of the fish prior to collection.  Plaintiff uses his experience to decide on what shading, contrast, color saturation, etc. to put into the illustration.

Plaintiff's intent with each illustration is to make a scientifically accurate representation of the fish species he is drawing.  Plaintiff's artwork is not photo-realistic, but is stylized to interpret certain light reflections and lighten or darken certain parts of the fish to make the drawings more uniform and aesthetically pleasing.

Plaintiff's illustrations differ slightly from the actual specimens.  For example, Plaintiff does not count every scale and every scale row on the specimen.  Scales and rows are inconsistent in shape and size in any particular species.  Rows often morph together, or split apart, can be difficult to count, and are irregular in size.  Plaintiff also adds shading to the fish's fin rays, which are clear, so that they are visible in the illustration.  Similarly, Plaintiff generally outlines the fish with gray lines using a graphite pencil, focusing on the fish's white belly and white or clear fins.  Plaintiff believes that this produces a more eye-pleasing illustration and creates a distinct border to aid in the scanning process.

Plaintiff testified at his deposition that he "express[es] his art" by excluding the imperfection of a particular fish, such as a "freak deformation" on a specimen that had two

-4-

pectoral fins on one side coming out of the same origin, because he did not want to include scars or other injuries that are not typical of that fish species.  This exclusion of imperfections is done to provide a more accurate representation of the typical appearance of that species of fish, because the abnormality would not normally exist in nature.

**Defendant Zazzle**

Defendant operates a website entitled zazzle.com.  This website allows third party users to create, buy, and sell customized merchandise online.  A user can upload images to zazzle.com and create certain products made available by Defendant, such as a t-shirt or mug, with that image on them.  Defendant then manufactures the user's customized product.  A user can upload images and create the products privately for the user's own use, or the user can "publish" his products, making them available for sale to the general public.  When the user publishes his products, they are sold through the user's "storefront" on the website.  Defendant sets the minimum sales price for each product sold through its website.

Defendant requires its website users to agree to its User Agreement.   The User Agreement contains the following license:

> You retain all ownership rights to your Content submitted to the Site.   By submitting Content to Zazzle, you grant Zazzle a nonexclusive, worldwide, transferable license, to use, copy, reproduce, modify, publicly display, and distribute your Content.

The term "Content" is defined in the User Agreement as "material including but not limited to text, data, photographs, graphics, stitch files, images, information, audio clips, and all digital data or any combination of these elements."  Every user who wants to sell his or her designs also must agree to the Nonexclusive License Agreement and reaffirm this agreement for every

product design that the user publishes.  The Nonexclusive License Agreement contains the following license:

> By uploading Designs to [zazzle.com] or creating Designs with Zazzle's design tools, you grant the following license to Zazzle:  the nonexclusive, worldwide, transferable, sublicensable right to use, reproduce, publicly display, sell, and distribute the Design in or on Products and in advertising, marketing, samples, and promotional materials for the purpose of promoting [zazzle.com] and Products.

Defendant requires each of its users to verify that he or she has the necessary rights to the images the user uploads.  Defendant relies on its users' verifications that they have the right to upload an image.  Based on the license agreement between Defendant and its users, Defendant provides the following metadata associated with all Realviews[2] appearing on zazzle.com:  "Image licensed to Zazzle Inc.  All unauthorized use is prohibited."

Zazzle has more than 203 million images in its database.  Although Defendant offers instructional information on creating files to upload for designing products, Zazzle users act independently when uploading and designing products.  Defendant retains the after-the-fact ability to remove or block access to infringing items uploaded to its websites.  Zazzle has created partnerships with well-known copyright and trademark holders, including Disney, Hallmark, and Warner Brothers.  It employs a team of people that reviews every order placed and has a policy to suspend the accounts of repeat offenders.  Defendant also includes a "Report this product" button on every product page.  Anyone can use this button to alert Defendant of a potential violation of its User Agreement.  When Defendant's content review team identifies an infringing product design in an order, it cancels the entire order, including ordered items that do not contain any suspected infringement.

---

[2] A "Realview" is a preview of what a manufactured product would look like after production.

Zazzle uses a pro-active tool called the "hot-list" to try and find infringing product designs before they are purchased.  This tool works by searching keywords (or "tags") placed by designers on their pages to categorize images and product designs.  If a keyword is used by an infringer to promote infringing goods, the hotlist is designed to find the infringing content.  Defendant admits that this tool is most useful for identifying famous trademark and copyright infringements.

Zazzle provides a platform and marketplace for designers to design unique products, commercialize their unique product designs, and receive payment.  Defendant provides smaller artists and designers with a platform to reap financial benefit from their creativity.  Defendant pays its users a royalty, which users are able to set themselves but is limited to ninety-nine percent of the product price.  There are numerous users who make a full-time living through selling their designs on products at zazzle.com.  Defendant generates revenue when it sells products.

**Defendant's Allegedly Infringing Activity**

Plaintiff claims that sixty-two of his fish illustrations have been copied and placed on Defendant's website.  Sixty of these illustrations have been registered with the U.S. Copyright Office.  These illustrations are not individually registered.  Instead, they are registered under seven different titles—one is a fine art print and the remaining six are books.  The registrations are:

- Bluegill (McCoy's pond), Reg. No. VA0001779644, a fine art print;

- Trout and Salmon of North America, Reg. No. VA0001163619, a book containing illustrations by Plaintiff;

- Fishes of Alabama, Reg. No. VA0001799485, a book containing illustrations by Plaintiff

- Fishes of the Central United States, Reg. No. TX0003082429, a book containing illustrations by Plaintiff;

- Trout Collector Folio:  a book of 15 postcards, Reg. No. VA0000998415, a book containing illustrations by Plaintiff;

- The Great Minnesota Fish Book, Reg. No. VA0001673790, a book containing illustrations by Plaintiff; and

- Fishes of Utah, Reg. No. VA0001783041, a book containing illustrations by Plaintiff.

Each of the five books listed above indicate that Plaintiff is the author or illustrator of the book on the cover.  Each book also contains a statutory copyright notice within the first few pages of the book.  Four of the five books, however, do not identify Plaintiff as the author or copyright holder immediately adjacent to each fish illustration within the book.  Only the book titled Trout Collector Folio contains the © symbol and Plaintiff's name under each illustration.

Plaintiff has spent 500 hours manually searching Defendant's website for his images.  In December 2014 and January 2015, Plaintiff reviewed more than 1,800,000 products on Defendant's website that contained the word "fish" as a keyword, in an attempt to find all use of his work on Defendant's website.  Plaintiff believes that many of the images that were uploaded to Defendant's website were scanned from the copyrighted publications containing Plaintiff's illustrations.

Plaintiff also operates a website entitled americanfishes.com.  Plaintiff's website is fairly intensive in terms of graphics; consequently, the fish images on it are "compressed" to reduce necessary bandwidth for loading the web pages.  Thus, they are not suitable for hi-res reproduction, would contain jpeg "artifacts" if enlarged, and would not be suitable quality for

printing.  Many of the digital files of Plaintiff's fish on his website are watermarked or have been watermarked with a copyright notice.  Before October 2013, however, some of the digital files on Plaintiff's website did not contain a watermark.  Every page on Plaintiff's website, however, contains a copyright notice.

Plaintiff notified Defendant of allegedly infringing product designs for sixty-two of his illustrations.  Defendant removed some of the allegedly infringing designs, but six months after receiving notice, there were still products with Plaintiff's images remaining on the website.  In addition, users continue to upload images to the website that Plaintiff contends are identical to or are derivative copies of his illustrations and offer products containing such images for sale.

Plaintiff filed this lawsuit on November 5, 2013, and filed his First Amended Complaint on December 15, 2014.  Plaintiff alleges that Defendant engaged in direct, contributory, and/or vicarious copyright infringement through the use of sixty-two of his copyrighted fish illustrations on Defendant's website.  Specifically, Plaintiff alleges that users uploaded unauthorized copies of his fish illustrations to zazzle.com and that Defendant stored and used these images to manufacture products sold on the website.  Plaintiff also alleges that Defendant violated the DMCA by providing or distributing false copyright management information on the Realview images on zazzle.com and by removing or altering Plaintiff's copyright management information from his illustrations.

After Plaintiff filed his First Amended Complaint, Defendant filed a Motion to Dismiss asserting that Plaintiff failed to state a claim under which relief may be granted.  The Court subsequently entered the Pretrial Order, and Defendant filed its Motion for Summary Judgment. In his response to the Motion for Summary Judgment, Plaintiff submitted his own affidavit. Defendant contends that this affidavit relies on impermissible expert testimony and has filed a

motion asking the Court to strike it.  The Court will address this motion first.  Then, the Court will address Defendant's summary judgment motion, and to the extent there are any claims remaining after the Court issues its ruling on that motion, the Court will address Defendant's Motion to Dismiss.

## II.      Motion to Strike Affidavit of Joseph Tomelleri

Defendant asks the Court, pursuant to Fed. R. Civ. P. 37(c)(1), to strike Plaintiff's affidavit, preclude Plaintiff from offering expert testimony at trial and from testifying to the documents and opinions set forth in his affidavit, exclude the exhibits set forth in the affidavit at trial, and award Defendant costs and attorneys' fees.  Rule 37(c)(1) states that if a party does not provide information or identify a witness as required by Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."   Defendant contends that Plaintiff's affidavit violates Rule 26(a)(2) because it contains expert opinion testimony, and Plaintiff did not identify himself as an expert in this case.

"A summary judgment affidavit may not contain expert testimony unless the affiant has first been designated an expert witness under Fed. R. Civ. P. 26(a)(2)."[3]  If the witness is not designated an expert, the witness's testimony is limited to those opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[4]   "When the subject matter of proffered testimony

---

[3] *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005) (citation omitted).

[4] Fed. R. Evid. 701.

constitutes 'scientific, technical, or other specialized knowledge,' the witness must be qualified as an expert under Rule 702."[5]

The line between lay testimony under Rule 701 and expert testimony under Rule 702 is not obvious. For example, the owner or officer of a business may testify to the value of property or expected profits without the necessity of qualifying the witness as an accountant, appraiser, or similar expert.[6] The Advisory Committee notes to Rule 701 states that such opinion testimony is admissible "not because of experience, training, or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business."[7]

Defendant contends that Plaintiff's affidavit contains four types of inadmissible expert testimony. First, Defendant objects to paragraphs 19, 36, 37, 38, and 48 as requiring expert testimony related to computers, Adobe Photoshop origination of digital files, and efficacy of image recognition searching on large databases. The Court will admit Plaintiff's testimony in paragraphs 19 and 37 regarding Adobe Photoshop. Plaintiff testified that he uses the program to prepare digital images of his work. Thus, his testimony is based on his knowledge as an illustrator of his images rather than the experience training, or specialized knowledge he has an expert. In paragraph 36, Plaintiff states that Defendant does not run a "Content Based Image Retrieval" software on the zazzle.com website. Plaintiff has not set forth any foundation or reason as to how he would be aware of this information. Therefore, the Court will disregard this statement. The remaining statements in Paragraph 36 are admitted. In paragraph 38, Plaintiff

---

[5] *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (citing Fed. R. Evid. 702).

[6] Fed. R. Evid. 701 (Advisory Committee Notes).

[7] *Id.*

states that many of the images uploaded to Defendant's website were scanned from copyrighted publications containing his images and that he does not think certain images in one of Defendant's exhibits were taken from his website.  The Court will also admit this testimony, as it involves Plaintiff's testimony concerning his own website.   Finally, paragraph 48 does not contain expert testimony related to computers.   Thus, the Court will not disregard it on this ground but on the ground that it contains a legal conclusion.

Defendant next objects to paragraphs 6, 32-34, 36, 38, 40, 43-44, 48, and 49 as containing impermissible legal opinions on federal copyright law and the Federal Rules of Civil Procedure.  This Court is not so naïve that it cannot recognize when an affiant is making a legal conclusion rather than a factual statement.   The Court refuses to address each individual paragraph that Defendant objects to on this basis.  To the extent these paragraphs contain legal conclusions, the Court will disregard the particular statement within those paragraphs on this basis.

Defendant next objects to paragraphs 9-11, 16, 17, 21, 24, and 25 on the ground that they contain scientific information concerning the biological and anatomical composition of fish and paragraphs 9, 10, 14, 15, 18, 20, 22, 23, and 25-27 on the ground that they contain expert testimony regarding originality and artistic expression.  As the illustrator, Plaintiff is entitled to testify regarding the artistic process he uses to create his images.  He is also allowed to testify regarding the subject of his illustrations.  The majority of the statements Defendant objects to in these paragraphs contains such testimony.   However to the extent Plaintiff's testimony encroaches the line between lay and expert testimony, the Court will allow it.   Defendant has been aware from the beginning of this case that Plaintiff is the creator of his illustrations.  Plaintiff has made no attempt to hide his involvement in the artistic process, and Defendant has

had ample opportunity to conduct discovery regarding such involvement.  Thus, the Court sees

no prejudice to Defendant in allowing to testify as to the matters set forth in paragraphs 9-11, 14-

18, 20, and 22-27.  The Court declines to strike these paragraphs from the affidavit.

Finally, Defendant contends that Plaintiff's Exhibits AA, A3, A4, B2, B3, C2, C3, D1,

D2, D3, F, G, I3, N3, Q3, Q4, R3, R4, S1-S4, T3, T4, T5, U, and X3-X9 should be dismissed

because Plaintiff did not produce them before the close of discovery and because they require

expert testimony.  Again, the Court disagrees.  The majority of these exhibits are demonstrative

exhibits that make it easier for Plaintiff to explain how his illustrations may be different from

other fish illustrations or how his illustrations may have been uploaded, copied, and altered by

users of Defendant's website.  It is easier to explain these concepts by looking at the illustrations

and uploaded images themselves rather than through written explanation.  Therefore, the Court

will allow these exhibits.  With respect to Exhibits S1-S4 and Exhibit U, Defendant asserts that

Plaintiff failed to timely produce these exhibits during discovery.  Defendant has not shown that

these exhibits were subject to any of its discovery requests to Plaintiff.  But, Plaintiff has a

continuing duty to supplement its Rule 26(a) initial disclosures.[8]  Therefore, the Court will not

allow Plaintiff to rely on these exhibits in support of its response to Plaintiff's motion.

The Court recognizes that Defendant's counsel is required to strongly advocate for its

client.  The current motion, however, appears highly contentious and unnecessary.  Defendant is

asking the Court to impose drastic sanctions that are not warranted by the procedural history of

this case or the factual testimony at issue.  Defendant takes issue with the vast majority of

Plaintiff's affidavit but fails to show how such testimony is relevant or used to create a genuine

---

[8] *See* Fed. R. Civ. P. 26(e).

issue of material fact.  In addition, Defendant does not dispute over 100 of Plaintiff's Additional Material Facts in its Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, and ninety of these facts are supported by thirty paragraphs of Plaintiff's Affidavit.  The Court declines to grant Defendant the full relief it requested.  The Court will treat the paragraphs at issue as set forth above.  Defendant's Motion to Strike Affidavit of Joseph Tomelleri is granted in part and denied in part.

## III.    Motion for Summary Judgment

### A.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[9] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[10]  The movant bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[11]  If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[12]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot

---

[9] Fed. R. Civ. P. 56(c).

[10] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[11] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[12] *Id*. (citing Fed. R. Civ. P. 56(e)).

survive a motion for summary judgment.[13]   The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[14]

**B.      Analysis**

  **1.      Direct Copyright Infringement Claim**

  To establish direct copyright infringement, Plaintiff must show that (1) it owns a valid copyright and (2) Defendant copied constituent elements of the works in question that are original.[15]   Registration of a copyright is a prerequisite to the filing of an infringement action.[16] A Copyright Office Certificate of Registration obtained within five years of first publication is "prima facie evidence of the validity of the copyright and of the facts stated in the certificate."[17] It is undisputed that two of Plaintiff's works at issue here, Bluegill (McCoy's Pond) and Fishes of Alabama, were not registered within five years of publication.   Thus, these registrations are not prima facie evidence of copyright validity.   However, Plaintiff's remaining works at issue in this case were registered within five years of registration.   For these works, Defendant may overcome the presumption of validity "by presenting evidence and legal argument sufficient to establish that the works in question were not entitled to copyright protection."[18]

   **a.      Originality**

---

   [13] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

   [14] *LifeWise Master Funding*, 374 F.3d at 927.

   [15] *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991) (citation omitted).

   [16] *See* 17 U.S.C. § 411(a) ("no civil action for infringement of the copyright in any United States work shall be instituted until . . .  registration of the copyright claim has been made").

   [17] 17 U.S.C. § 410(c).

   [18] *Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1262 (10th Cir. 2008) (citation omitted).

The Copyright Act defines the types of works that may be protected by a valid copyright:

(a) Copyright protection subsists . . . in *original* works of authorship fixed in any tangible medium of expression . . .

(b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.[19]

Defendant argues that Plaintiff's illustrations are not original, and therefore do not qualify for copyright protection. The originality of work is the " '*sine qua non* of copyright.' "[20] "[N]ot every work of authorship, let alone every aspect of every work of authorship is protectable in copyright; only original expressions are protected."[21] To qualify as "original," the work must be " 'independently created by the author (as opposed to copied from other works).' "[22] It also must " 'possess[] at least some minimal degree of creativity.' "[23]

The Tenth Circuit addressed the originality requirement in *Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc*.[24] In that case, the circuit held that the two-dimensional models of three-dimensional Toyota vehicles created by Meshwerks did not meet the originality requirement for copyright protection.[25] Meshwerks created the models by taking meticulous measurements of the vehicles' dimensions.[26] The measurements were then mapped onto a computerized grid and

---

[19] 17 U.S.C. § 102 (emphasis added).

[20] *Meshwerks*, 528 F.3d at 1262 (quoting *Feist*, 499 U.S. at 345).

[21] *Id*. at 1262.

[22] *Id*. at 1263 (quoting *Feist*, 499 U.S. at 345).

[23] *Id*.

[24] 528 F.3d 1258 ( 10th Cir. 2008).

[25] *Id*. at 1268.

[26] *Id*. at 1260.

modeling software connected the dots.[27]  Meshwerks' employees later placed lines on the screen

to resemble the vehicle as closely as possible.[28]  The task took eighty to 100 hours of work per

vehicle due to the difficulty in portraying a three-dimensional car as a two-dimensional image.[29]

The end results of this labor were "utterly unadorned" digital models with no color and

shading.[30]

     The Tenth Circuit found that Meshwerks' models were simply copies of the Toyota

vehicles and not entitled to copyright protection.   The court relied on two factors in its analysis:

(1) an objective assessment of the models and (2) the parties' purpose in creating them.[31]  The

court emphasized the fact that Meshwerks' models depicted Toyota's vehicles without any

individualizing features, explaining that "[the models] are untouched by a digital paintbrush;

they are not depicted in front of a palm tree, whizzing down the open road, or climbing up a

mountainside."[32]  The court also found that Meshwerks' intent when making the models showed

a lack of originality because Meshwerks "set out to copy Toyota's vehicles, rather than to create,

or even to add, any original expression."[33]

     The Tenth Circuit has not addressed the concept of originality in the context of drawings,

photographs, or sculptures of live animals.  However, other circuits that have analyzed the issue

have stated that while realistic depictions of live animals may be protected by copyright, that

---

[27] *Id.*

[28] *Id.*

[29] *Id.* at 1261.

[30] *Id.*

[31] *Id.* at 1264.

[32] *Id.* at 1265.

[33] *Id.* at 1268.

protection is "thin" and limited to the original elements that are not dictated by nature.[34]

Specifically, The Ninth Circuit has held:

> Nature gives us ideas of animals in their natural surroundings:  an eagle with talons extended to snatch a mouse; a grizzly bear clutching a salmon between its teeth; a butterfly emerging from its cocoon; a wolf howling at the full moon; a jellyfish swimming through tropical waters.   These ideas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them.   An artist may, however, protect the original expression he or she contributes to these ideas.   An artist may vary the pose, attitude, gesture, muscle structure, facial expression, coat, or texture of animal.   An artist may vary the background, lighting, or perspective.   Such variations, if original, may earn copyright protection.[35]

Here, Defendant argues that Plaintiff's illustrations are not entitled to copyright protection because they are accurate representations of real animals and therefore lack originality. Defendant claims that the only "originality" that Plaintiff claims in his drawings is the exclusion of imperfections from the particular specimen he is using to create his illustration.  Because no one can copy something that is not included in an illustration, there is no protection for these exclusions.

At this stage in the litigation, the record must show no genuine issue of material fact that Plaintiff's illustrations convey "minimal creativity" for the images to be deemed unoriginal.  The record does not support this finding.  Although Plaintiff attempts to create scientifically accurate representations of the fish species he is illustrating, this does not mean that his illustrations automatically lack minimal creativity.  Plaintiff states in his affidavit that each illustration is his artistic expression of a particular species taken from in-field observations, photographs, and one or more specimens of that species.  He states that his artwork is not photo-realistic, but stylized

---

[34] *Satava v. Lowry*, 323 F.3d 805, 810-13 (9th Cir. 2003).

[35] *Id*. at 813.

to interpret certain light reflections and lighten and darken certain parts of the fish to make the drawings more uniform and aesthetically pleasing.  Plaintiff further states that he must decide which diagnostic characteristics of that fish he intends to include, including whether to keep the fish's mouth open or shut.  In addition, there are differences between the actual fish species and Plaintiff's illustrations.  Plaintiff states that the scale row and the spots on his illustrations are more regular in size and shape than those on the specimens.  Plaintiff also outlines fin rays with a thin gray line because many fish species have white or clear fins and outlines each fish in his illustration with gray lines because this produces a more eye-pleasing illustration.  Unlike the two-dimensional models in *Meshwerks*, there are visual differences in the actual fish species and Plaintiff's illustrations.  Therefore, the Court finds that there is a genuine issue of material fact regarding whether Plaintiff's illustrations are sufficiently original to warrant copyright protection.  Defendant's motion for summary judgment is denied on this issue.

### b.    Copying

" 'Copying' refers to 'the infringement of a copyright holder's exclusive rights under a copyright.' "[36]  The copying element of an infringement claim has two components.[37]  First, the plaintiff must show that the defendant copied the plaintiff's work "as a factual matter."[38]  Second, the plaintiff must show " 'substantial similarity' between the allegedly infringing work and the elements of the copyrighted work that are legally protected."[39]  "This second component,

---

[36] *Home Design Servs. v. Starwood Const., Inc.*, 801 F. Supp. 2d 1111, 1118 (D. Colo. 2011) (quoting *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 n.2 (10th Cir. 1996)).  A copyright holder's exclusive rights include the following:  to reproduce the copyrighted work, to prepare derivative works based on the copyrighted work, to distribute copies or phonorecords of the copyrighted work to the public, and to display and perform the copyrighted work publicly.  17 U.S.C. § 106(1)-(6).

[37] *Blehm v. Jacobs*, 702 F.3d 1193, 1199 (10th Cir. 2012) (citing *Country Kids*, 77 F.3d at 1284).

[38] *Id.* (citing *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993)).

which is a mixed question of law and fact, determines whether a defendant's factual copying constitutes actionable infringement."[40]

Defendant does not address the issue of actual copying in its summary judgment motion. Instead, Defendant contends that there was not *actionable* copying because Plaintiff's illustrations are not protected by copyright law.  Therefore, the Court will focus on the second element of the test listed above—whether there is a substantial similarity between the designs uploaded to zazzle.com and the legally protectable elements of Plaintiff's illustrations.

The substantial similarity analysis is "primarily a qualitative rather than a purely quantitative analysis, and must be performed on a case-by-case basis."[41]   In making this determination, the Tenth Circuit has used an "abstraction-filtration-comparison" test, which is summarized as follows:

> At the abstraction step, [the court] separate[s] the ideas (and basic utilitarian functions), which are not protectable, from the particular expression of the work. Then [the court] filter[s] out the nonprotectable components of the product from the original expression.  Finally, [the court] compare[s] the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar.[42]

According to the Tenth Circuit, this test excludes any expression that is in the public domain or otherwise unoriginal, from protection.[43]

---

[39] *Id.* (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 942-43 (10th Cir. 2002)).

[40] *Id.*

[41] *Gates Rubber*, 9 F.3d at 839 (citation and footnote omitted).

[42] *Kindegartners Count, Inc. v. Demoulin*, 249 F. Supp. 2d 1214, 1223-24 (D. Kan. 2003) (citing *Country Kids*, 77 F.3d at 1284-85).

[43] *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1372 (10th Cir. 1997)).

Defendant argues that it is entitled to summary judgment under the abstraction-filtration-comparison test because Plaintiff's illustrations are entirely unoriginal, and after the Court separates the unprotected elements from the protected elements, there will be nothing to compare. Defendant has divided the allegedly infringing designs found on zazzle.com into three groups. The first group consists of 127 product designs with fish images that are simply silhouettes of fish. The second group consists of eight product designs with line art images depicting a fish. And the third group consists of 246 products incorporating eight different fish images. The images in the third group are much more detailed than the first two groups.

Plaintiff offers little in response to Defendant's argument. Plaintiff does not address any of the three groups of infringing designs Defendant sets forth in its motion. Instead, Plaintiff simply avers that his illustrations are original and that the abstraction-filtration test does not apply in this case because this is not a case where one work is compared to another work to see if protected items are copied. Plaintiff argues that unlike the cases in which the abstraction-filtration test was used, his illustrations were uploaded "bit for bit" and "not changed in any way."

Plaintiff's argument is belied by the very exhibits he submits in his response to Defendant's motion and the designs he claims are infringing. In his response, Plaintiff provided an overlay of his fish illustration with an allegedly infringing design for three different images. None of these overlays show the fish silhouettes to be identical, and Plaintiff even admits as such for one of the overlays by captioning it as "near identical outlines." Furthermore, none of the allegedly infringing designs in the first two groups identified by Defendant are identical to Plaintiff's illustrations. None of Plaintiff's illustrations consist of simple silhouettes or line art drawings.

Plaintiff also provides no legal support for his argument that the abstraction-filtration-comparison test should not be applied in this case. Nonetheless, the Court finds that it is not necessary to apply the test for every allegedly infringing image in this case. The Tenth Circuit has declined to apply this test where the works in question are relatively simple[44] and has stated that "not every case requires extensive analysis," and the appropriate test "may vary depending upon the claims involved, the procedural posture of the suit, and the nature of the works at issue."[45] Here, the images in the first two groups consist simply of silhouettes and line art depictions. Thus, the Court does not believe the full abstraction-filtration-comparison test need be applied when analyzing them. However, when looking at these images, the Court's goal is the same: it will separate unprotected ideas in Plaintiff's illustrations from protected expression and compare the remaining protected expression to the allegedly infringing images.[46]

As noted above, the first group of allegedly infringing designs uses only the silhouette of a fish. It is undisputed that Plaintiff measured each specimen and drew the outline of each fish so that the specimen's exact proportions were present in the illustration. The outline of a fish is a fact and therefore cannot be original.[47] Once the outline of the fish is separated from the remaining elements of Plaintiff's illustrations, there is nothing left to compare. Therefore, the

---

[44] *See Blehm*, 702 F.3d at 1200 n.4 (declining to apply the case where the works in question were "relatively simple.")

[45] *Jacobsen*, 287 F.3d at 943 n.5 (citation omitted).

[46] *See Blehm*, 702 F.3d at 1200 n.4 ("Although we do not use the abstraction-filtration-comparison analysis, our goal is the same: separating unprotectable ideas from protectable expression . . . and comparing the remaining protectable expression to the [allegedly infringing] images to determine whether they are substantially similar.").

[47] *See Country Kids*, 77 F.3d at 1287 (holding that the copyright protection did not extend to the "size, shape and medium" of wooden dolls).

Court grants Defendant summary judgment with respect to the product designs identified in group one of Defendant's motion.[48]

The second group of allegedly infringing designs depicts fish using line art. Again, the outline of the fish in Plaintiff's illustrations is not protectable by copyright. Once the outline is removed from Plaintiff's illustration, there is nothing left to compare to these product designs. Group two consists of line art images that do not contain any of the colors or other details in Plaintiff's illustrations. Therefore, the Court grants Defendant summary judgment with regard to the images identified in group two of its motion.[49]

The substantial similarity analysis is more difficult for the third group of images identified by Defendant. Unlike the first two groups, these uploaded images are not relatively simple. These fish images contain colors and details normally found on the species they depict. A comparison of these images with Plaintiff's illustrations would require more than simply determining if an outline of a fish is protected by copyright law. While some aspects of Plaintiff's illustrations are not protectable, other aspects may be. As discussed above, originality only requires "a minimal degree of creativity."[50] The issue of whether Plaintiff's illustrations contain such creativity is one to be left for trial. Therefore, the Court denies summary judgment with regard to the images identified in group three of Defendant's motion.[51]

## 2.    DMCA

---

[48] Group one is identified as Exhibit O to Defendant's motion.

[49] Group two is identified as Exhibit P to Defendant's motion.

[50] *Feist*, 499 U.S. at 345.

[51] Group three is identified as Exhibit Q to Defendant's motion.

In addition to copyright infringement, Plaintiff alleges that Defendants violated § 1202 of the DMCA. This section generally protects the integrity of copyright management information ("CMI"). CMI is specifically defined in the statute as:

> [A]ny of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:
>
> (1) The title and other information identifying the work, including the information set forth on a notice of copyright.
>
> (2) The name of, and other identifying information about, the author of a work.
>
> (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
>
> . . .
>
> (6) Terms and conditions for use of the work.
>
> (7) Identifying numbers or symbols referring to such information or links to such information.
>
> (8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.[52]

### a.    Violation of DMCA § 1202(a)

Under § 1202(a), "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement – (1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false."[53] Thus, to recover under § 1202(a), a plaintiff must show that a defendant who falsifies CMI

---

[52] 17 U.S.C. § 1202(c).

[53] *Id*. § 1202(a).

knows that it is false and that it provides, distributes, or imports the false CMI with the intent to aid infringement.[54]

Plaintiff contends that Defendant is liable under § 1202(a) because "the simple act of placing an image on Defendant's Website without the surrounding CMI of Plaintiff's books or Plaintiff's website removes author-identifying CMI."  Plaintiff further argues that "in the context of a viewer seeing that wrongfully copied image on Defendant's website, that viewer is presented with a unified image in a browser window showing Defendant's Website with false CMI."   In other words, Plaintiff claims that the mere appearance of his illustrations on zazzle.com creates false CMI.  Plaintiff, however, provides no factual or legal support for this argument.  Other courts have held that the mere appearance of an image on a website does not convey CMI for that image.[55]  Indeed, websites generally do not claim ownership or authorship over an image just because the image appears on the website.  For example, when a user visits google.com or imdb.com a number of images come up, but no user is lead to believe that the websites created or owns these images.  Thus, the fact that Defendant's illustrations simply appear on Plaintiff's website does not convey false CMI.

The only other information that Plaintiff alleges is false CMI is the phrase "Image licensed to Zazzle Inc. All unauthorized use is prohibited," which Defendant includes in the metadata for each Realview.  Defendant contends that this information is not CMI because it does not inform the public that the image is copyrighted.  It only conveys that Defendant acquired a license.  Given the dearth of case law regarding CMI, the Court declines to address

---

[54] *Schiffer Pub., Ltd. v. Chronicle Books, LLC*, 2004 WL 2583817, at *14 (E.D. Pa. Nov. 12, 2004); *see also* 17 U.S.C. § 1202(a); *Agence France Presse v. Moral*, 2014 WL 3963124, at *7 (S.D.N.Y. Aug. 13, 2014).

[55] *See Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 928 (N.D. Ill. 2013).

whether this phrase meets the statutory definition.  Regardless, the Court will still grant summary judgment in Defendant's favor on this claim.  To recover under a § 1202(a) claim, the plaintiff must show that the defendant provided the false CMI *with the intent to aid infringement*.  Here, Plaintiff has not come forward with any evidence showing that Defendant adds the phrase "Image licensed to Zazzle Inc." with the intent to induce infringement.  Defendant has invested significant resources to remove any designs on its website accused of intellectual property infringement.  Plaintiff has not pointed to a single fact that creates a genuine issue of material fact showing otherwise.  Therefore, Defendant is entitled to summary judgment on Plaintiff's 17 U.S.C. § 1202(a) claim.

### b.      Violation of DMCA § 1202(b)

Under § 1202(b),

[N]o personal shall, without the authority of the copyright owner or the law-

(1) intentionally remove or alter any copyright management information,

(2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

(3) distribute, import for distribution, or publicly perform works . . . knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

knowing, or, . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.[56]

Plaintiff asserts that Defendant violates §1202(b) in the three ways: (1) "by using a copy that is a screenshot of Plaintiff's drawing on his website (which removes CMI by way of restricting the screenshot size)," (2) "by taking a scanned image from Plaintiff's books (which removes CMI by

---

[56] 17 U.S.C. § 1202(b).

way of avoiding Plaintiff's copyright notice on another page)," and (3) "by digitally copying an image from Plaintiff's website to Defendant's website (which removes only the image with its integral metadata and avoids surrounding webpage CMI displays showing identity of Plaintiff)."

Defendant contends that it is entitled to summary judgment on this claim because the information Plaintiff identifies as CMI does not meet the statutory definition.  The definition of "CMI" requires that the identifying information be "conveyed in connection with copies . . . of a work."[57]  Defendant argues that the statutory notices at the beginning of the six books at issue in this litigation are not CMI because such information is not "conveyed in connection with" Plaintiff's illustrations.  Because neither the Tenth Circuit nor this Court has addressed the definition of CMI, Defendant asks the Court to adopt the Eastern District of Pennsylvania's ruling in *Schiffer Publishing Ltd. v. Chronicle Books, LLC*.[58]

In that case, the district court found that copyright notices on the inside of book covers did not constitute CMI for the individual photographs inside the books, which were the subject of the plaintiff's claims.  The court held that to be liable under § 1202(b), "a defendant must remove copyright management information from the 'body' of, or area around, plaintiff's work itself."[59]  Because there was no identifying information next to the individual photographs in the books, the court found that the defendant did not remove or alter any CMI.

This Court is not bound by the district court's ruling in *Schiffer* and declines to follow it here.  The Court does not believe that the phrase "conveyed in connection with copies . . . of the work" requires that the information be located immediately adjacent to the image to qualify as

---

[57] 17 U.S.C. § 1202(c).

[58] 2004 WL 2583817 (E.D. Penn. Nov. 12, 2014).

[59] *Id*. at *14.

CMI.  Furthermore, in addition to the statutory copyright notice, both the cover and title page of the books at issue state that the illustrations are by Plaintiff.  It seems implausible that an individual reading these books would not understand that the phrase "Illustrations by Joseph R. Tommelleri" would not apply to all of the illustrations within the book.[60]

Applied to this case, the Court finds that the phrase "conveyed in connection with" requires Plaintiff to show that the images uploaded to Defendant's website were obtained from sources that contained the identifying information, *i.e.,* the phrase "Illustrations by Joseph R. Tommelleri" or the statutory copyright notice at the beginning of the books.  Plaintiff states in his affidavit that many of his images uploaded to zazzle.com were scanned from the six books at issue in this case.  Therefore, the Court finds that there is a genuine issue of material fact regarding whether Plaintiff has met the statutory definition of CMI and declines to grant summary judgment to Defendant on this basis.

Defendant also contends that there is no identifying information that qualifies as CMI with regard to the metadata included in the electronic image files uploaded to zazzle.com. Defendant claims that the metadata associated with the image files uploaded to zazzle.com by individual users reveals nothing that identifies the copyright registration or Plaintiff as the author or owner of the copyright.  Plaintiff's response to this argument is puzzling.  The only response the Court can decipher is his factual assertion that seven of the images Defendant refers to contain a copyright notice in their metadata when the image is viewed in Adobe Photoshop. However, the paragraph Plaintiff cites to in his affidavit does not support this statement of fact.

---

[60] *See Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1102 (N.D. Ill. 2014) (finding that is was not "implausible" that a viewer of a photography album would not understand that the credit line on the back of the album also referred to the photo on the cover of the album).

That paragraph only describes Plaintiff's experience in Adobe Photoshop and does not reference the images.  Moreover, later in his response brief, Plaintiff appears to assert that all of the images uploaded to Defendant's website came from the six copyrighted books and not his website.

Plaintiff has not come forward with any evidence that shows that the images on his website that were allegedly copied and uploaded to zazzle.com contain metadata with identifying information that satisfies the definition of § 1202(c).  Therefore, to the extent Plaintiff claims that Defendant violated § 1202(b) through the alteration and removal of CMI in metadata included in the electronic image files of his illustrations, the Court grants summary judgment in Defendant's favor.

Finally, the Court will address the individual subsections of § 1202(b).  Plaintiff does not indicate whether he is seeking to hold Defendant liable under § 1202(b)(1), (b)(2), or (b)(3).  Defendant argues, however, that the Court should grant summary judgment with regard to § 1202(b)(1), which prohibits a person from intentionally altering or removing copyright management information.  The Court agrees.  Plaintiff has not come forward with any evidence showing that Defendant itself uploaded his fish illustrations to zazzle.com, much less evidence that shows that Defendant intentionally removed CMI.  Therefore, the Court grants summary judgment to Defendants under § 1202(b)(1).  Because the parties have not addressed the remaining subsections of § 1202(b) in their briefs, the Court declines to address them in this Order.

### 3.       Secondary Liability for Copyright Infringement

There are two ways in which a plaintiff may impose secondary liability under copyright law—through contributory liability or vicarious infringement.  "One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting

from direct infringement while declining to exercise a right to stop or limit it."[61]   Plaintiff contends that Defendant is liable under each of these theories.

### a.   Contributory Infringement

To establish a claim for contributory infringement, a plaintiff must show direct copyright infringement, knowledge by the defendant of that direct infringement, and material contribution to the infringement.[62]   The material contribution element is established by showing that the defendant (1) had knowledge of the infringing activity and (2) encouraged or assisted the others' infringement, or provided machinery or goods that facilitated the infringement.[63]   Although the Tenth Circuit has not addressed contributory liability for copyright infringement in the context of computer system operators, the Ninth Circuit has articulated a specific test for determining liability in such cases.   Under this test, "[a] computer system operator can be held contributorily liable if it has *actual* knowledge that *specific* infringing material is available using its system and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works."[64]

---

[61] *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (citations omitted).

[62] *Ellison v. Robertson*, 357 F.3d 1072, 1076-77 (9th Cir. 2004); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2014) ("[A]n actor may be contributorily liable for intentionally encouraging direct infringement if the actor knowingly takes steps that are substantially certain to result in such direct infringement."); *Hermeris, Inc. v. Brandenburg*, 2011 WL 231463, at *3 (D. Kan. Jan. 23, 2011).

The Supreme Court has articulated a second test to prove contributory infringement.   This test imposes liability for "distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'comercially significant noninfringing uses.' " *Perfect 10, Inc.*, 508 F.3d at 1170 (citing *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)).   This test is known as the *Sony-Betamax* rule.   *See Sony Corp. v. Universal Studios*, 464 U.S. 417, 442 (1984).   The Court has not addressed this test because Plaintiff does not appear to assert liability that Defendant is liable under it and has not addressed it in its response brief.

[63] *Arista Records LLC v. Lime Group LLC*, 715 F. Supp. 2d 481, 515 (S.D.N.Y. 2010) (citations omitted).

[64] *Perfect 10, Inc.*, 508 F.3d at 1172 (internal quotations and citations omitted).

Defendant argues that it is entitled to summary judgment on this claim because Plaintiff has not shown that Defendant had actual knowledge of specific infringing material available on zazzle.com and failed to remove it from the website. Plaintiff, however, has stated in his affidavit that after he gave Defendant notice of the allegedly infringing material on zazzle.com, some of that material remained on the website for six to nine months. In response, Defendant claims that it promptly removed every product design it believed might contain Plaintiff's illustrations and that it did not have actual notice of specific infringing material because Plaintiff did not use its "report this product" button to report the potentially infringing product designs. Thus, the Court finds that there is a genuine issue of fact on this issue and denies Defendant's motion on Plaintiff's contributory infringement claim.

### b. Vicarious Liability

A defendant is vicariously liable for copyright infringement "when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement."[65] With regard to the direct financial benefit inquiry, the critical question is "whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps."[66] The financial benefit may be established by "by showing that users are attracted to a defendant's product because it enables infringement and that its use of the product for infringement financially benefits the

---

[65] *Grokster*, 545 U.S. at 930 n.9.

[66] *Ellison*, 357 F.3d at 1079.

defendant."[67]  It exists "where the availability of infringing material acts as a draw for customers"[68]

Defendant asserts that Plaintiff has provided no evidence that infringement is a draw to zazzle.com users and that the evidence before the Court suggests just the opposite.  The Court agrees.  The only zazzle.com user who has testified in this case stated that what drew him to zazzle.com was the fact that Defendant maintains the products to which he can apply his own artwork.  He did not testify that it was the potential access to copyrighted material or the ability to recreate copyrighted material.  Furthermore, although Plaintiff states in his affidavit that infringement is a draw to the zazzle.com website, this unsupported statement of his belief is not enough to meet his burden at summary judgment.  "At the summary judgment stage, statements of mere belief in an affidavit must be disregarded."[69]  Plaintiff has not come forward with sufficient evidence for a reasonable juror to conclude that the infringing activity was a draw for users on zazzle.com.[70]  Therefore, the Court grants Defendant summary judgment on Plaintiff's vicarious liability claim.

### 4.      Statutory Damages

Plaintiff indicated in the Pretrial Order that he may seek an award of statutory damages.  The amount of statutory damages to be awarded in a copyright infringement case is controlled by 17 U.S.C. § 504(c)(1), which states:

---

[67] *Arista Records*, 715 F. Supp. 2d at 518 (citing *Fonovisa v. Cherry Auction, Inc*., 76 F.3d 259, 263 (9th Cir. 1996)).

[68] *Ellison*, 357 F.3d at 1078 (internal quotations and citations omitted).

[69] *Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (quoting *Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994)).

[70] Having so concluded, the Court need not reach Defendant's argument regarding the right and ability to control third parties' alleged infringement on its website.

> Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, **with respect to any one work**, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. **For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.**[71]

The Copyright Act defines a "compilation" as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."[72]

Plaintiff has seven registrations with the U.S. Copyright Office consisting of one fine art print and six books. Plaintiff contends that the Defendant infringed sixty illustrations from these registrations and that it should receive an award of statutory damages for each infringed illustration because the illustrations have independent economic value and are sold separately. In response, Defendant contends that the six books for which Plaintiff has a copyright registration are "compilations," as that term is defined under the Copyright Act, and therefore, Plaintiff would only be entitled to seven statutory damage awards in the event it is liable for infringement.

The United States Courts of Appeals are split in determining what constitutes a "compilation" or "one work" for purposes of statutory damages. The First, Ninth, Eleventh, and D.C. Circuits employ a "separate economic value test," which allows a plaintiff to receive multiple statutory damage awards if part of the compilation copied "has an independent economic value and is, in itself, viable."[73] The Second and Fourth Circuits more strictly follow

---

[71] 17 U.S.C. § 504(c)(1) (emphasis added).

[72] *Id.* § 101.

[73] *Columbia Pictures Television v. Krypton Broad.*, 106 F.3d 284, 295 (9th Cir. 1997) *rev'd on other grounds, Feltner v. Columbia Pictures Television*, 118 S. Ct. 1279 (1998)*; Gamma Audio & Video, Inc. v. Ean-*

the language of the statute, holding that regardless of the number of works that appear in a compilation, only one statutory damage award is available per compilation.[74]  The Tenth Circuit has not addressed this issue, and it is an issue of first impression for this Court.

The Court declines to employ either method of analysis at this time.  The record in this case is replete with factual issues, including the number of Plaintiff's illustrations uploaded to zazzle.com, whether the uploaded images came from Plaintiff's website or books, and whether Plaintiff issued the illustrations individually or as part of his books.  Therefore, the Court defers ruling on this issue until a later time.

### 5.    Conclusion

For the reasons stated above, the Court grants in part and denies in part Defendant's Motion for Summary Judgment.  Specifically, the Court denies Defendant's motion in regard to Plaintiff's claim for direct infringement of the images set forth in Exhibit Q to Defendant's motion; Plaintiff's claim for contributory infringement; and Plaintiff's claim for violation of §§ 1202(b)(2)-(3) of the DMCA.  The Court grants Defendant's motion with regard to Plaintiff's claim of direct infringement of the images set forth in Exhibits O and P to Defendant's motion; Plaintiff's claim of vicarious infringement; and Plaintiff's claim for violation of §§ 1202(a) and 1202(b)(1) of the DMCA.  The Court also grants Defendant's motion the extent Plaintiff claims that Defendant violated § 1202(b) of the DMCA through the alteration and removal of CMI in metadata included in the electronic image files of Plaintiff's illustrations.

---

*Chea*, 11 F.3d 1106, 1117 (1st Cir. 1993); *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769-70 (11th Cir. 1996); *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990).

[74] *Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 142 (2nd Cir. 2010); *Xoom, Inc. v. Imagineline, Inc.*, 323 F.3d 279, 285 (4th Cir. 2003).

## IV.    Motion to Dismiss

Defendant's Motion to Dismiss asks the Court to dismiss each claim of Plaintiff's First Amended Complaint.  Because Defendant asks the Court to dismiss these claims on a different basis than that offered in its Motion for Summary Judgment, this motion is not subsumed by Defendant's Motion for Summary Judgment.  However, to the extent the Court has already granted Defendant summary judgment for part of Plaintiff's claims, the Court denies the motion as moot as to those claims.  The Court will address Defendant's motion with regard to Plaintiff's claims of direct infringement, contributory infringement, and violation of §§ 1202(b)(2) and 1202(b)(3) of the DMCA.[75]

### A.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' "[76]  "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[77]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to

---

[75] For clarification, the Court will not address Plaintiff's Motion to Dismiss with regard to Plaintiff's claim of direct infringement for the images set forth in Exhibits O and P to Defendant's Motion for Summary Judgment.  It will also not address Plaintiff's claim for violation of §§ 1202(a) and (b)(1) of the DMCA because the Court has already granted summary judgment as to these claims.

[76] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[77] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

state a claim for which relief may be granted."[78]   In determining whether a claim is facially plausible, the court must draw on its judicial experience and common sense.[79]   All well-pleaded facts in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff.[80]   Allegations that merely state legal conclusions, however, need not be accepted as true.[81]

## B.   Analysis

### 1.   Direct Copyright Infringement Claim

Defendant argues that Plaintiff's direct infringement claim should be dismissed because Plaintiff has not alleged that Defendant performed any volitional conduct.   In response, Plaintiff makes a number of arguments as to why his allegations are sufficient.   Highly summarized, these arguments assert that Plaintiff was not required to plead volitional conduct as an element of his direct infringement claim, and even if he were, Plaintiff's First Amended Complaint satisfies this burden.

As previously noted, there are two elements to a copyright infringement claim in the Tenth Circuit:  (1) ownership of a valid copyright and (2) copying of constituent elements of that copyright that are original.[82]   Defendant argues that in addition to these two elements Plaintiff is required to prove that Defendant caused the copying or in other words, engaged in some volitional act of copying Plaintiff's illustrations.   In support of this argument, Defendant relies on

---

[78] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

[79] *Iqbal*, 556 U.S. at 678.

[80] *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

[81] *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[82] *Feist*, 499 U.S. at 361.

cases from the Ninth, Second, Third, and Fourth Circuits, which generally hold that an internet service provider that provides a service analogous to a copy machine is not liable for direct infringement because it is the customer and not the internet service provider that chooses to make the infringing recording.[83]   Neither the Supreme Court nor the Tenth Circuit has held whether such conduct is an element of a direct infringement claim.[84]

As previously noted, the Pretrial Order has been entered in this case.  This Order does not set forth the elements of a direct infringement claim.  However, regardless of whether the Court imposes a volitional conduct requirement, Plaintiff's allegations are sufficient to state a claim. Plaintiff alleges that he owns a valid copyright in his fish illustrations and that copies of his illustrations have been uploaded to zazzle.com.   Plaintiff further alleges that Defendant manufactures and sells customizable products containing images uploaded to zazzle.com, that Defendant packages and ships the novelty items in a box with Defendant's trademark, and that Defendant uses Plaintiff's images in connection with its marketing and advertising.   These allegations are sufficient to allege a claim for direct copyright infringement—with or without the volitional conduct requirement.  Therefore, Defendant's motion is denied on this claim.

### 2.    Contributory Infringement

Defendant next asserts that Plaintiff has failed to sufficiently plead his claim for contributory infringement.  A defendant is liable for contributory infringement if it knew of the

---

[83] *See Fox Broad Co. v. Dish Network, LLC*, 747 F.3d 1060, 1067 (9th Cir. 2014); *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2nd Cir. 2008); *CoStar Group, Inc. v. Loopnet*, 373 F.3d 544, 551 (4th Cir. 2004); *Parker v. Google*, 242 F. App'x 833, 837 (3rd Cir. 2007).

[84] *See ABC, Inc. v. Aereo, Inc.*, -- U.S. --, 134 S. Ct. 2498, 2501 (2014) ("In other cases involving different kinds of service or technology provides, a user's involvement in the operation of the provider's equipment and selection of the content transmitted may well bear on whether the provider performs within the meaning of the Act.").

direct infringement and induced, caused, or materially contributed to the infringing conduct.[85]

"An allegation that a defendant merely provided the means to accomplish an infringing activity is not enough to state a claim for contributory infringement."[86]   Instead, the defendant must engage in personal conduct that encourages or assists the infringement.[87]   Therefore, to state a claim for contributory copyright infringement, a plaintiff must allege (1) direct infringement by a third party; (2) knowledge by the defendant of direct infringement; and (3) material contribution to the infringement.[88]

Defendant argues that Plaintiff has not sufficiently plead its contributory infringement claim because it has not alleged that Defendant had the requisite knowledge of the infringement and because it has not alleged that Defendant materially contributed to the infringement.   The Court disagrees.   With regard to the knowledge element, other courts have held that knowledge required to establish contributory infringement must be of specific infringing files and not merely general knowledge that the site is used for infringement.[89]   Here, Defendant admitted in its Motion to Dismiss that it received a cease and desist letter from Plaintiff in June 2012. Furthermore, Plaintiff has alleged that Defendant failed to remove or disable access to the allegedly infringing images on its website despite having knowledge of the infringing activity. Exhibit A to the Amended Complaint also shows specific examples of Defendant's allegedly

---

[85] *Viesti Assocs., Inc., v. Pearson Educ., Inc.*, 2013 WL 4052024, at *7 (D. Colo. Aug. 12, 2013) (citing *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 750 (S.D.N.Y. 2012)).

[86] *Id.* (citing *Grokster*, 545 U.S. at 937).

[87] *Id.*

[88] *Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1057 (D. Colo. 2012) (citations omitted).

[89] *See, e.g., Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (affirming that the plaintiff did not state a claim for contributory infringement because the plaintiff must allege "more than a generalized knowledge . . . of the possibility of infringement"); *Wolk*, 840 F. Supp. 2d at 751.

infringing use of one of Plaintiff's copyrighted illustrations.  Taken together, this is sufficient pleading of the knowledge requirement for a contributory infringement claim.[90]

Plaintiff has also sufficiently plead the material contribution requirement.  This requirement has been characterized as requiring "personal conduct that encourages or assists the infringement"[91] and "substantial participation."[92]  Here, Plaintiff alleges that Defendant materially contributes or induces the alleged infringement by printing an infringing image on a blank good and by paying a royalty for the use of the infringing image.  This is enough to satisfy the material contribution element of a contributory infringement claim.  Therefore, Defendant's motion is denied with respect to this claim as well.

### 3.   DMCA

Finally, Defendant contends that Plaintiff's claim under §1202(b) should be dismissed because the allegations in Plaintiff's First Amended Complaint are limited to CMI contained in metadata and it is undisputed that Plaintiff does not use CMI in metadata.  The Court has already granted Defendant summary judgment with regard to Plaintiff's claim that Defendant violated § 1202(b) by removing or altering CMI within the metadata associated with the electronic image files of Plaintiff's illustrations.  Therefore, the only issue left for the Court to decide is whether Plaintiff's claim under § 1202(b) is limited to CMI located within metadata or if it includes additional CMI associated with Plaintiff's illustrations.

---

[90] The Court is aware that the Pretrial Order is the controlling document for trial.  *See* Fed. R. Civ. P. 16(d).  However, Defendant's Motion to Dismiss is based on the allegations within the First Amended Complaint, and these allegations are sufficient.  The Court notes that Plaintiff's allegations in the Pretrial Order regarding the requisite knowledge for a contributory infringement claim are not sufficient.  However, the Court declines to dismiss this claim based on those allegations because Defendant's motion does not directly address them.

[91] *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 757 (7th Cir. 2012).

[92] *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 411 (N.D.Cal. 2004).

Although Plaintiff's First Amended Complaint only discusses CMI in the context of metadata, the Pretrial Order does not.[93]  Plaintiff contends in the Pretrial Order that his fish illustrations have been published in books, that all of these books contain a copyright notice and title pages, and that Defendant violated 17 U.S.C. § 1202 in part by "removing information initially displayed in connection with Mr. Tomelleri's works."  The definition of CMI includes information regarding the author of the work and the copyright notice.  Construing these allegations liberally, as the Court is required to do, these allegations are sufficient to extend Plaintiff's § 1202(b) claim to CMI that is contained in information other than metadata.[94]  Therefore, the Court will allow Plaintiff's claim to proceed under § 1202(b) in regard to CMI altered or removed from the books in which Plaintiff's illustrations appear.  Defendant's motion is therefore denied with regard to Plaintiff's DMCA claim.

**IT IS THEREFORE ORDERED** that Defendant Zazzle, Inc.'s Motion to Dismiss (Doc. 182) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Zazzle, Inc.'s Motion for Summary Judgment (Doc. 282) is **GRANTED IN PART AND DENIED IN PART**.

---

[93] *See Expertise, Inc. v. Aetna Finance Co.*, 810 F.2d 968, 973 (10th Cir. 1987) (finding that the Defendant did not waive its statute of limitations defense because it was not included in its answer but it was included in the pretrial order and stating "[w]hen an issue is set forth in a pretrial order, it is not necessary to amend previously filed pleadings.").

[94] *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 818 (10th Cir. 1979) (stating that courts are to "liberally construe" pretrial orders "to cover any of the legal or factual theories that might be embraced by their language" (internal quotation marks and citation omitted)).

IT IS FURTHER ORDERED that Defendant Zazzle, Inc.'s Motion to Strike Affidavit of Joseph Tomelleri (Doc. 311) is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

Dated this 9th day of December, 2015.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE